# Weatherly *v.* Capital City Water Co.

*Bill in Equity for the Appointment of a Receiver of a Dissolved Corporation.*

1. *Dissolution of corporation; relation of statutes in reference thereto.* The statutory provisions relating to voluntary dissolution of corporations, (Code of 1886, §§ 1688-89), have no operation upon corporations dissolved by adversary proceedings under the statutes relating thereto, (Code of 1886, §§ 1690-93); and the two sets of statutory provisions, being independent in origin and entirely distinct, although codified together in one chapter devoted to the "dissolution of business corporations," can not be regarded as embracing one general scheme for the purposes of construing by interpretation the one set of provisions by reference to the other.

2. *Dissolution of corporation by forfeiture of charter; appointment of receiver; construction of statute.*—Under the provisions of the statute (Code of 1886, § 1691), after the dissolution of a corporation by its charter being adjudged forfeited, a receiver is not appointed as a matter of course; but the business and properties of the corporation so dissolved are committed to the persons who were its managers at the time of its dissolution, and they become entitled to the right, and are charged with the duties, of administering and settling its affairs.

3. *Same; same; when receiver will be appointed.*—The provisions of the statute, (Code of 1886, § 1691), committing the estate of a corporation dissolved by forfeiture of its charter to those who were its managers at the time of its dissolution as trustees for its creditors and stockholders, does not oust the ordinary jurisdiction of courts of chancery to appoint receivers under the circumstances and exigencies which demand such appointment; but in order to justify the appointment of a receiver of a corporation so dissolved, there must appear such facts as, under the general principles of equity jurisprudence call the power into exercise; such as incompetency or unfaithfulness or mismanagement on the part of trustees, or the absence of authority on their part to subserve some peculiar interest of the party complaining, by reason of which he is injured.

4. *Same; same; equity of bill.*—Where a corporation owning property worth hundreds of thousands of dollars is dissolved by having its charter adjudged forfeited, and its property and affairs pass into the hands of the persons who were its directors at the time of dissolution, as provided by statute, a bill filed by one as a creditor of said corporation in the sum of one hundred dollars, asking for the appointment of a receiver to take charge of the properties and to carry on the busi-

[Weatherly v. Capital City Water Co.]

ness of said corporation until the settlement of its affairs, and for the payment of its creditors, but which avers no facts showing a necessity for the marshalling of the assets of the company, and does not aver that the corporation is insolvent or that the statutory trustees are unfaithful or incompetent, or without power to pay its debts, or· that they are mismanaging or wasting the assets to such an extent as to endanger complainant's claim, or to any extent, nor that such trustees have refused, upon demand, to pay his debt, is wholly without equity.

5. *Contract with city for supplying water; rights of inhabitants; bill for receiver improper remedy.*—Where a water company has contracted to supply a city and its inhabitants with water suitable for all purposes, upon certain terms, every inhabitant of such city is entitled to have water supplied to him upon the terms provided in the contract; but no one inhabitant, or any number of individual inhabitants, has the right, the company failing therein, to have a receiver appointed to carry out the contract for his or their benefit and for the benefit of the city itself and all other inhabitants; a bill for such purpose not being maintainable, but *mandamus* being the proper remedy for the enforcement of the contract, and affording adequate relief.

6. *Same; bill by inhabitant of city for appointment of receiver of dissolved water company; proper parties.*—Where a water company, having a contract with a city to supply it and its inhabitants with water of a quality and quantity suitable for all purposes, is dissolved by reason of its charter being adjudged forfeited, and its property and affairs pass into the hands of those who were its managers at the time of its dissolution as statutory trustees for its creditors and stockholders, looking to a final settlement and winding up of its affairs, an inhabitant of said city can not, after such dissolution, maintain a bill against the dissolved corporation, as sole respondent, for the appointment of a receiver to take charge of its affairs, property, effects, &c., and carry out said contract; such corporation, by its dissolution, becoming non-existent except for the limited purposes and time specified in the statute, and no longer capable of performing its contractual duties or of being in default in reference thereto, is, therefore, an improper party defendant.

7. *Same; same; when bill does not contain equity.*—Where in such a case, while the property and affairs of the dissolved water company are in the hands of the statutory trustees, an inhabitant of the city files a bill for the appointment of a receiver, in which he does not allege that there has been or will be any failure on the part of said· trustees to supply water to the city and its inhabitants, but aks for the appoint on the theory that said trustees, though in possession, are without authority to carry on the business and continue to supply the water, but makes no averment of loss or injury by reason of the business being so carried on pending a settlement of the corporate affairs, such bill is wholly without equity.

8. *Same; contract continuing after dissolution.*—Contracts by a cor-

poration, which are within corporate competency, and of a nature to continue after dissolution and bind the corporate property, are not abrogated by the dissolution of such corporation, but are of continuing efficacy against the successors to the defunct corporation in ownership of its property, assets and franchises.

9. *Same; same; case at bar.*—Where a water company, which was under a contract with a city to supply it and its inhabitants with water, is dissolved by having its charter adjudged forfeited, the decree of dissolution does not, of itself, abrogate the contract between the city and the owners of the water works.

10. *Same; same; city's right after dissolution.*—Where a water company, which has a contract with a city to supply it and its inhabitants with water, is dissolved by having its charter forfeited, pending the winding up and settlement of the affairs of the defunct corporation, the city can insist upon a continuance of the water supply, and if the discontinuance should occur or be threatened, the duty of continuance can be compelled.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. JOHN G. WINTER.

The bill in this case was filed by the appellant, George Weatherly, against the appellee, the Capital City Water Company, and contained the following averments : That the complainant was a resident citizen of the city of Montgomery, Alabama, and, together with substantially all the other residents of said city, was dependent for his supply of water upon the water furnished and agreed by its charter to be furnished by the Capital City Water Company, which is a corporation chartered under the laws of the State and having its principal place of business in the city of Montgomery; that it was made a duty of said water company, by its charter, to furnish at all times to the city of Montgomery and its inhabitants a sufficient supply of pure and wholesome deep well water for domestic and other purposes, and that this duty was assumed by the company under an ordinance-contract entered into by the company's assignors, A. H. Howland and associates, and the City Council of Montgomery, October 7, 1886, which contract was assigned by said Howland to the water company, and the company has since then assumed all the duties enjoined by said contract. That upon the assignment of this ordinance-contract, the water company constructed, and has maintained and operated a system of water works

in the said city, and there is no other service or supply
of water available to the complainant or the other in-
habitants of said city than that furnished by the Capital
City Water Company. It was then averred that in a
proceeding in the nature of *quo warranto*, instituted
against the said corporation before a court of competent
jurisdiction, there was a judgment rendered vacating
the charter and annulling the corporate existence of the
Capital City Water Company; and that the works, ways
and machinery, and all the property, assets, &c., of said
company were at the time of the filing of the bill, in the
hands of the officers or agents of the late corporation.
It was further averred that the said corporation was in-
debted to the complainant in the sum of one hundred
dollars, and further, "That, owing to the facts herein
stated, it is of urgent and immediate importance to
orator and other creditors of said company, and to orator
and other inhabitants of said city, as consumers of water
furnished by said plant or water works, and to the well
being and safety of said city itself, that said works,
ways and machinery, offices, books, moneys, accounts,
and vouchers of said company should be taken into the
custody of this court by a receiver appointed by your
honor, to the end that the same should be operated, used
and preserved to the best benefit of all those interested
and concerned in the said corporation, its properties and
effects. And orator further avers that it is made the
duty of this court, on the dissolution of said corporation
by said judgment aforesaid, by the laws of the State of
Alabama, sitting as a court of equity, to appoint a re-
ceiver or receivers of the works, properties and effects
of said late corporation, so that the same may be ad-
ministered to the best interest of all concerned under
the supervision of this honorable court."

The Capital City Water Company was made the only
party defendant, the bill averring in that connection
that the complainant "makes party defendant to this
bill the Capital City Water Company, a late corporation
under the laws of the State of Alabama, and which under
the laws of said State, preserves its existence for the
purposes of suing and being sued, for five years after
its dissolution as aforesaid, and prays for the usual writ
of subpoena to issue out of this court directed to said
Capital City Water Company, requiring it to answer

this bill within the time by law prescribed." The prayer of the bill was for the appointment of a receiver of all the property, effects, machinery, assets, &c., of the corporation.

The respondent demurred, among others, upon the following grounds : 1. The bill shows that complainant has a plain, complete and adequate remedy at law for the enforcement of all the right or interest shown in him. 2. It appears from the allegations of the bill that complainant's debt was not due at the time of the filing of the bill, and has not been reduced to judgment, and the bill does not make a case of fraud, or for the enforcement of a lien, or of danger to a trust fund, or necessity for marshalling assets. 3. It appears from the bill that the City Council of Montgomery is an indispensable party complainant to the bill. 4. It appears from the bill that the managers of respondent at the time of the dissolution are indispensable parties defendant, and they are not made parties. 6. It appears from the bill that the contract with the city of Montgomery terminated upon the dissolution of respondent corporation, and it does not appear that the assets of the late corporation were insufficient to meet its liabilities, or that the city of Montgomery has any authority to condemn the property of the late corporation, or to compel the use of it in the continuance of the water supply, or has offered compensation therefor, or requested the continuance of the execution of the contract with it, nor does the bill show that complainant is a party to, or in privity with that contract, or entitled to enforce it. 7. There are no allegations showing fraud or danger of deterioration or loss of the property, or loss of income from allowing it to remain in the hands of and be managed by the managers at the time of dissolution, or that they are unfaithful, or that there is need for marshalling the assets, or that the assets of the late corporation in the hands of its manager are not sufficient to meet all of its liabilities, or can not be properly distributed by the managers. 8. Because it appears from the bill that the managers of respondent, at the time of its dissolution, are the proper persons to wind up its affairs, pay its debts, and dispose of its property for the benefit of all concerned, and there is no allegation that they are incompetent or unfaithful, or that there is any danger of loss or deterioration of the

assets of the dissolved corporation in their hands, and
no facts are shown why they should be removed from
the trust imposed upon them by statute, or are without
power or ability or desire to perform it. 9. Because
the bill states no facts showing that the court ought to
take jurisdiction to liquidate the affairs of the dissolved
corporation and sell or distribute its property, and in
the meantime operate it as a going concern for such
purpose. 10. Because it appears from the allegations
of the bill that the managers at the time of the dissolu-
tion, as well as at the time of the filing of the bill, were
lawfully in possession of the property and assets of the
dissolved corporation, and discharging the duties en-
joined on them by the statute, for the benefit of all the
interests concerned, and that they have full power and
authority under the law of the land, to continue the
water supply to the city of Montgomery and its inhabi-
tants, and to keep the water plant from deterioration,
by continuing it as a going concern, until such time as
they may be able to wind up its affairs ; and no facts are
averred why they should be displaced, or justifying the
interposition of a receiver. 11. Because the relief
sought is to take possession of the assets of the dissolved
corporation, and to manage and dispose of them by a
receiver, and yet the bill does not make defendants
either the managers at the time of the dissolution, or
the stockholders, or any person who has either the legal
or equitable title to the property of the dissolved cor-
poration, or the possession or the right to the possession
of them. 12. Because the bill is too vague and uncer-
tain in its allegations to justify the appointment of a re-
ceiver ; in this that complainant fails to disclose the na-
ture of his claim, whether due or not, or how it arose,
and fails to set forth that the managers of respondent
were either unable or unwilling to continue the water
supply, or without the means to do so, or that they
would discontinue the supply, and fails to state any
facts showing how it is essential to the well being and
safety of the city of Montgomery or other consumers, or
even to creditors, to have a receiver appointed.

There was also a motion made by the respondents to
dismiss the bill for the want of equity.

Upon the submission of the cause upon the motion
made by the complainant for the appointment of a re-

11

[Weatherly v. Capital City Water Co.]

ceiver, and on the demurrers to the bill and the motion to dismiss for the want of equity, the judge, sitting as chancellor, rendered decrees overruling the motion for the appointment of the receiver, and sustaining the grounds of demurrer set forth in this opinion. From these decrees the complainant appeals, and assigns the rendition thereof as error.

GORDON MACDONALD, for appellant.—1. The property of a dissolved or insolvent corporation is a trust fund for its creditors, and a court of equity will see that this trust is properly executed.—*Mumma v. Potomac Co.*, 8 Peters, 281; *Curran v. Arkansas*, 15 How. 304. When the property of an insolvent or dissolved corporation is charged with the performance of great public duties the interests of the public must be consulted by the courts, and this though the result may be to lessen the value of the property, as in cases where receivers' certificates are issued under authority of the court.—*Ellis v. Vernon I. L. & Water Co.*, 86 Texas, 109; *Meyers v. Johnson*, 53 Ala. 237; High on Receivers, § 312; *Barton v. Barbour*, 104 U. S. 126; *Un. Trust Co. v. Illinois &c. R.·R. Co.*, 117 U. S. 434. On the other hand, mere private business corporations occupy a different position. With these the public has nothing to do, and it has no special concern in the continued operation thereof after the insolvency or dissolution. Cases involving judicial control of the latter are plainly distinguishable from receiverships over railroads, and other properties, in the continued operation of which the public have a great interest, and which are charged with the performance of great public duties. This distinction is well stated in the case of the *Farmer's Loan & Trust Co. v. Grape Creek Coal Co.*, 50 Fed. Rep. 481.

2. Appellant brought this suit, not alone as a creditor of the dissolved corporation, but as an inhabitant of the city of Montgomery. As a resident of the city of Montgomery, the complainant had a contractual right against the water company. Where a city is invested with power to make a contract with a water company for a supply of water to be furnished to its citizens, individually and collectively, and that, if, by virtue of such contract each citizen acquired a right to compel the water company to furnish him water, a necessary

sequence of that right would be to vest in the citizen individually, such contractual interest, as to authorize him to commence any legal or equitable proceeding to enforce the same, or see to its continued enjoyment. This direct question has been decided by the Court of Appeals of Kentucky.—*Paducah Lumber Co. v. Paducah Water Supply Co.*, 7 L. R. A. 77; *Conrad v. Trustees of Ithaca*, 16 N. Y. 158; *Little v. Banks*, 85 N. Y. 258; *Fulton Fire Ins. Co. v. Baldwin*, 37 N. Y. 648; *Johnston v. Beldon*, 47 N. Y. 130; *Atkinson v. New Castle, &c. Water Works*, L. R. 6 Ex. 404.

3. In considering the right of the appellant to bring this suit growing out of his being an inhabitant of the city of Montgomery, and deriving, as he avers, all his water supply from the works of the company, these two admitted facts must be borne in mind : 1st. That the public ordinance contract between the City Council of Montgomery, acting in its own behalf and in behalf of the inhabitants thereof, a class to which the appellant belongs, is a peculiar one, and made it a public duty, devolved on the works and properties of the dissolved corporation, to supply appellant individually with water. 2d. That this ordinance contract has been engrafted into and made a part of the charter granted to the late company, and that hence these works are charged with this public duty not only by that contract, but by the very act that brought this corporation into existence.—*Stein v. State*, 37 Ala. 125; *Henley v. Mayor, &c.*, 5 Bing. 91; s. c. (King's Bench), 3 Barn. & Adolph. 77; s. c. (House of Lords) 2 Cl. & Fin. 331. The water company, although in the possession of properties which are charged with the performance of a public duty towards complainants and other residents of the city of Montgomery, is prohibited by law from further performance of that duty. The complainant is, therefore, without any remedy at law, either to compel the performance of that duty or to enforce his claim for damages which would grow out of the non-performance of that duty. He shows that the danger is great, and imminent and irreparable; and hence it is, that he can maintain the present bill to seek the relief in equity which is the only court where the relief needed can be given. By such public contracts and charter obligations, *quasi* public corporations and the individuals composing the public

are drawn into relations analogous to privity of contract, and, as in cases of the non-performance of· duty by a public carrier, the injured person may bring his action either upon the contract, or upon the duty provided by law.—*Parnaby v. Canal Co.*, 11 Ad. & El. 223.

4. The complainant, therefore, had a beneficial interest in the lawful contract. The defendant has forfeited its right to perform this contract or to exercise any franchise whatever. The bill asks that the property which is thus charged with the performance of that duty; and which is now in the hands of those who can not be made to perform it, be taken from out of the court and placed in the hands of other instrumentalities by means of which the duty will be performed under the direction and control of the court of equity. A public duty of this kind· may spring as well from a public contract of the corporation as from its charter. The bill in this case shows that here it springs from both.—2 Beach Private Corp., § 832; *State v. White*, 42 Amer. Rep. 496; *State v. Nebraska Tel. Co.*, 52 Am. Rep. 404; *Williams v. Mutual Gas Co.*, 50 Am. Rep. 266.

5. The business of this corporation, the exercise of its public duties can not be lawfully carried on by the officers in charge of it at the time of its dissolution and, hence, a receiver must be appointed. The right and duty to supply water for the citizens of Montgomery, and to that end keep and lay pipes in the public thoroughfares of this city, was a public corporate business of this corporation, and not a mere private one; which, as an incident to the strictly private character of their statutory trust, the statutory trustees can perform. All of reason and the vast weight of authority sustain this contention.—2 Beach Private Corporation, §§ 834, 835, and authorities cited in note 4; *Gibbs v. Consolidated Gas Co.*, 130 U. S. 396; *Hagin v. Albina L. & W. Co.*, 14 L. R. A. 424; *Olmsted v. Morris Aqueduct Props.*, 47 N. J. L. 333; Morawetz Priv. Corp., § 1129; *Lumbard v. Stearns*, 4 Cush. 61; *Louisville Gas Co. v. Citizens' Gas Co.*, 115 U. S. 683; *N. O. Gas Light Co. v. Louisiana L. Co.*, 115 U. S. 650.

THOS. G. & CHAS. P. JONES, *contra.*—1. For the purpose of this proceeding; Weatherly is not even a creditor for the small sum of one hundred dol-

[Weatherly v. Capital City Water Co.]

lars—for the sworn answer denies the indebtedness *in toto*. Weatherly refuses to give any information as to the nature of his claims. Besides, an ample fund has been put in court to secure him. The defendant resists the application. Not a solitary creditor or stockholder desires it, and there is no charge of waste, etc. If there was waste (and that is not charged), so far as complainant is concerned, it is of no moment, for no amount of waste can injure one not a creditor, or who, if a creditor, is amply secured by a fund in court. Under such a state of things, it would be most unheard of, and an "anomaly in equity jurisprudence," for a court to put a receiver over this valuable plant, and incumber this trust property with this useless expense, and detriment of receivership to secure a disputed claim of $100.00. *Milwaukee R. R. Co. v. Soutter*, 13 Wallace, 523.

2. The complainant's right to a receiver can not be rested upon the idea that the public have the right to the appointment of a receiver of the defunct corporation. Certainly the complainant is not the public.

The public on account of the property having been "effected with a public use" have no right to a receiver. How is such a right to be worked out? The obligations which the charter imposed are gone with the abrogation of the charter. The charter is no longer in force, and hence none of the duties it imposed. The charter cannot at one and the same time be dead for some purposes and alive for others. It cannot be alive for the purpose of imposing duties on the late corporation, and dead as to the privileges and rights it conferred. The law puts it out of the power of the late corporation to perform the burdens which the charter imposed. It has no hold on the property, to compel its owners to do that which but for the charter, they would be under no obligation to do. There is no existing law by which anybody can be bound to furnish the city an abundant supply of artesian water. How can a court of equity pass such a law? All the court could do in any event, if such a law was in force, would be to specifically enforce the boring of new wells. Yet a direct proceeding for that purpose is ended by the forfeiture of the charter. The reason why such a suit abates, is because the duty sought to be enforced is ended when the charter is withdrawn. The duty died with the charter. Indeed as Chief Justice

Waite said in the noted case of *Munn v. Illinois*, when the property is withdrawn from public use, the right of the public in it ceases. There is no principle of constitutional or common law by which the present owners of the water plant can be compelled to carry on the water business. The effort here is not only to devote the property to public use, but to do it at the owners' expense— to confiscate for public use.—*Britton v. Green Bay &c. Co.*, 38 A. & E. Corp. Cases, 427.

3. The statutes plainly give the managers the right to do what is necessary to be done, to continue the concern as a going concern.—Code of 1886, § 1691. It inevitably contemplates this when it says they shall wind up the business "unless" a receiver is appointed. The court is not required to appoint a receiver, and it can justify doing so, only upon some well known equitable grounds, none of which are shown. Besides this the right to sell water and lay pipes was not derived from the charter. It arose from contract. It is a matter of common right to any one whom the city gives the right to use the streets: In carrying on such business no right or privilege is exercised or done which was forfeited with the charter. The charter only gave corporate existence, and the right to carry on the business as a corporation. Its withdrawal in no sense affected the rights of the owners of the property to exercise such of the franchises as made the use of the property valuable, &c. *Meyer v. Johnson*, 53 Ala. 237; *People v. O'Brien*, 111 N. Y. 1. In every phase there was ample authority for the managers to carry on the work, even if some prerogative franchise was requisite. See also *Havemeyer v. Sup. Ct.*, 32 A & E. Corp. Cases, 480.

4. The mere fact of the dissolution of the corporation did not render it powerless to continue the supply of water; and the right of the complainant to a receiver can not be rested upon this theory. There is no foundation for this theory. The right to furnish water for pay is not a prerogative franchise : and engaging in that business is not an occupation which it is unlawful to carry on without a grant from the crown or legislature. 1 Rorer on Railroads, p. 8, and authorities there cited. Any one who has water to sell, if he can get the right to lay pipes over the land of others, or in the streets, can carry on the business in a city and charge

for the water without any franchise or charter.—*People v. Gas Light Co.*, 38 Mich. 156. Besides, in this case, although the charter was forfeited, the right remained in those entitled to the property to have such beneficial use and enjoyment of it as would render it valuable as water works.—*People v. O'Brien*, 111 New York, 1. This right when the corporation died vested in those upon whom its rights devolved.—*Meyer v. Johnson & Stewart*, 53 Ala. 237. The managers appointed by the statute representing the late company had, therefore, the right to supply water through the mains, and charge for it, even if a franchise were requisite in the first instance. That statute (Code of 1886, § 1691), added nothing to the jurisdiction of the court of equity to appoint a receiver, which depends wholly on other provisions of the Code, and general principles of equity jurisprudence. Can it be contended, if a receiver is not appointed, that these managers have not the authority to do all the needful things in the discharge of their trust which the statute expressly commits to them? Certainly one of the highest duties of a trustee (which the statute declares the managers to be) of a *quasi* public institution like this, is to preserve its efficiency by keeping it "a going concern." The legislature never intended that the owners of such property should be forced into court, although their managers run the property to suit stockholders if they do not imperil the rights of creditors. See a kindred subject discussed in *Florence Gas, Electric Light & Power Co. v. Hanby, Receiver*, 101 Ala. 29.

5. Both on reason and the language, section 1691 of the Code was not intended to require the appointment of a receiver merely because of a dissolution. On the contrary, its purpose was to obviate it, unless on some well known and equitable ground the appointment of a receiver should become necessary.—*Havemeyer's Case*, 84 Cal. 327. No court has been more pronounced than ours in condemning the seizure of property by receivers, on flimsy pretexts or for the protection of insignificant interests, or when any other order will serve the purpose.—*Brierfield Iron Works v. Foster*, 54 Ala. 622; *Kelly v. Trustees*, 58 Ala. 489; *Pyles v. Riverside Co.*, 17 A. & E. Corp. Cases, 102; *Brown v. Savings Bank*, 5 Mo. App. 1; *Oakley v. Bank*, 1 Greene Chan. 173. Here the statute expressly commits the management of the corporate

affairs to the managers at the time of the dissolution, and expressly declares them trustees to wind up its affairs. The dissolution is the very contingency which gives birth to their existence and powers. Statutory trustees are always displaced with reluctance, and never except for other and different causes than the dissolution of the corporation. There is no charge here of incompetency, unfaithfulness, inability to discharge the duties, or other charge that these statutory trustees are improper persons to administer the trust. All the courts hold that some such reasons must exist and be properly alleged, before any court can interfere.—*City Pottery Co. v. Yates*, 37 N. J. Equity, 1 ; s. c., 4 A. & E. Corp. Cases, 146.

6. Chapter 13 of Code, p. 409—"dissolution of business corporations"—shows a plain legislative intent not to require a receiver, as a legal consequence of a dissolution, except under a voluntary winding up. Then section 1686 says, upon such "decree of dissolution, the chancellor shall appoint a receiver." It omits such provision in section 1691. The omission is significant. *Lehman v. Robinson*, 59 Ala. 219.

7. Complainant shows no privity whatever in the contract between the late water company and the City Council.—*Eaton v. Water Co.*, 37 Neb. 546 ; *Poenix Co. v. Trenton*, 42 Mo. App. 122.

8. Upon the dissolution of the late water company, all its title and rights of possession passed to persons who stand in the relation to it that heirs do to their ancestor, dying intestate. The corporation no longer owned or held anything. The legal title vested in the stockholders, as tenants in common, according to their respective interests, charged with a paramount trust in favor of creditors. The right of possession vested immediately in the statutory administrators, who had power to dispose of the property, as trustees for the stockholders and creditors. The late corporation, after the dissolution, therefore, had neither a legal nor equitable title, or any right of possession, or title or interest of any kind whatever, in any property owned by it at the dissolution. The corporation is not the proper party to sue, in disputes as to how the assets shall be disposed of after the dissolution, or as to the relative rights of creditors between themselves, or as to how the property

shall be preserved or managed, after the dissolution. All the obligations of the contract with the city are dead, and only a right to sue for damages—if that exists—remains.—*Latrobe v. Western Union Tel. Co.*, 74 Md. 232; *Carr v. Union, &c., Co.*, 28 Mo. App. 215. The corporation has no interest or title whatever in any of these matters, which happen after its death, and pertain solely to stockholders and creditors, who succeed to the entire legal and equitable rights of the corporation. Decrees effecting them will not be allowed when it is the sole defendant.—*McCulloch v. Norwood*, 58 N. Y. 562. The foregoing construction is inevitable when sections 1690-93 of the Code are construed together, with reference to our system of jurisprudence. See also *Nelson v. Hubbard*, 96 Ala. 238.

9. Receivers are never appointed over property on bill disclosing that sole defendant has no legal or equitable title; and that others having both are not made parties. The bill in the present case discloses on its face that the corporation has been dissolved, and that the water works and other property are in the possession of its former officers. It, therefore, disclosed that the corporation, the sole defendant, had neither the legal or equitable title, nor the right of possession of the property over which complainant asked the court to appoint a receiver. Moreover, the legal effects of the averments of the bill was to make known to the court, not merely the foregoing facts, but the further fact that certain other persons were rightfully in possession, as the trustees of the holders of the legal title. It would be an anomaly in equity jurisprudence and a violation of all constitutional right to appoint a receiver over a trust estate, on a bill which showed that character of the estate, and that the trustee was rightfully in possession, and yet, did not make him a party. Such a thing cannot be sustained, no matter what the equity of the bill, if the trustee had been made a party.—*Arnold v. Bright*, 41 Mich. 210; *Baker v. Backers*, 32 Ill. 96; *Jones v. Schall*, 45 Mich. 379; *Crowder v. Moone*, 52 Ala. 220; *Moritz v. Miller*, 87 Ala. 332; *Moyers v. Coiner*, 22 Fla. 422; *Nusbaum v. Stein*, 12 Md. 322; *People v. Norton*, 1 Paige, 17.

10. The statutory trustees here sought to be superseded have higher rights than mere statutory appointees.

The bill shows that defendant was a corporation under the general law. Upon the dissolution, as we have seen, the legal title vested in the stockholders. These directors, being such at the time of the dissolution, became not only statutory trustees, but the dissolution also vested in them an individual title and ownership in the property itself. Many high authorities, though there are some to the contrary, hold that even a receiver, who is a mere creature of the court, and without other interest, cannot be displaced without notice.—*Smith v. Trenton Falls Co.*, 4 N. J. Eq. 505; *Attorney-General v. Haberdasher Society*, 2 Jur. 915; *Douherty v. Jones*, 37 Ga. 348. No case, however, can be found where any court (save in the instance where the court was doubtless incensed by alleged contempt) has ever held that trustees who were not only such by appointment of statute, but were also part owners of the property and holders of a legal title, and rightly in possession to manage it for themselves and the other owners, and all others interested, could be displaced, without notice, and on a bill to which they were not parties, although the bill disclosed their rights and possession. No court holds that such dispossession "is due process of law." They all denounce such proceedings as utterly subversive of justice and constitutional right. "Due process," when applied to judicial proceedings, means that "a party shall be properly brought into court, and that he shall have an opportunity when there to prove any fact which, according to the constitution and usages of the common law, would be a protection to him or his property."—*Zeigler v. S. & N. R. R. Co.*, 58 Ala. 599; *Wilburn v. McCalley*, 63 Ala. 436.

McCLELLAN, J.—Sections 1690 to 1693 of the Code of 1886 have been in existence and of force certainly since the Code of 1852, in which they were sections 1489 to 1492, inclusive. In that Code as also in the Codes of 1867 (§§ 1775 to 1778) and 1876 (§§ 2027 to 2030) they were in a chapter devoted to "General provisions in relation to private corporations." Their provisions in terms and originally in fact applied to all dissolved corporations, whether the dissolutions were voluntary or involuntary. The General Assembly of 1874-75, however, enacted a statute with respect to the "voluntary

[Weatherly v. Capital City Water Co.]

dissolution and settlement of private corporations," the effect of which was to take out of the operation of the existing law all corporations dissolved at the instance of stockholders. The provisions of that law were codified as a separate chapter in the Code of 1876 as sections 2054 *et seq.*; but in the Code of 1886, they were embodied along with the original statute in a chapter devoted to the "Dissolution of business corporations"; and constitute sections 1683 to 1689, inclusive, of the present Code. This reference to the history of our statutory provisions in respect of dissolved corporations has been made for the purpose of emphasizing the idea, not only that such of those provisions as relate to voluntary dissolution have no operation upon a corporation dissolved by adversary proceedings, but, that the two sets of provisions are so entirely distinct and independent in origin, as that even though now codified in juxtaposition to each other, they cannot be regarded as one general scheme for the purpose of construing or interpreting the one by reference to the other; as, for instance, deducing a legislative intent in respect of some provision in or omission from the original sections from some provision or omission in the act of 1875, now codified, as we have seen, in sections 1683 to 1689, inclusive. To the contrary, since we have in this case to deal with the property, rights, duties and obligations which belonged to or rested upon a corporation which has been dissolved at the suit of the State for misfeasance or nonfeasance, we shall leave entirely out of view the sections last referred to and proceed as if they had never been enacted.

It is very clear to us upon the terms of the statute applicable to a corporation whose charter has been adjudged forfeited, as was adjudged the charter of the respondent, the Capital City Water Co., that a receiver is not to be appointed on or after dissolution as matter of course. The manifest general purpose of the legislature was to commit the affairs and properties of a corporation so dissolved to the persons who were its managers at the time of the dissolution; but the lawmakers recognized that there might be special circumstances or peculiar exigencies in a given case which would breed a necessity to take the corporate affairs and property out of the hands of such managers, and to exclude any idea that the statutory designation of trustees should have the

effect of ousting the ordinary jurisdiction of courts of chancery to appoint receivers upon such circumstances or exigencies being made to appear, they expressly saved this jurisdiction, though doubtless such reservation was in fact unnecessary. But, whether necessary to that end or not, the provision in the statute having relation to the appointment of receivers by courts of competent jurisdiction was in pure conservation of an existing jurisdiction, and in no sense creative of a new power and jurisdiction: it does not undertake to confer authority upon any court which it had not before, but it refers to courts already invested with "competent authority." The rule declared by the statute is, that the managers of the corporation at the time of its dissolution shall administer its affairs after its death, and the exception to this rule is the intervention of a receiver appointed by a court of competent authority. The rule is created by the act. The exception exists apart from the act and is merely recognized by it. This mere recognition in and of itself neither adds to nor takes from the powers of the courts; it neither confers upon them authority which they had not before, nor takes from them authority which they had before, to appoint receivers, except only that the affirmative provision of the act committing the estate of the corporation to those who were its managers at the time of dissolution as trustees for its creditors and bondholders, emasculates the mere fact of dissolution so far as it might have otherwise been considered as a ground for such intervention of the courts, since the statutory creation of these trustees of the assets and concerns of the defunct corporation supplies the means of settling its affairs, which in the absence of a statute could probably be furnished only through the appointment of a receiver. So that under the statute a bill praying the appointment of a receiver must aver facts which upon general principles of equity jurisprudence and procedure would call into exercise the power of the court to the end sought: a state of things must be alleged which imports a necessity for the appointment of a receiver. The mere fact of dissolution not importing such necessity, since, as we have seen, the trustees appointed by the statute may settle the affairs of the corporation without resort to the courts for a receivership, the facts alleged must be of a character to show that the

[Weatherly v. Capital City Water Co.]

trustees are incompetent or unfaithful, or are misman-
aging the property to the injury of the complainant or
are without power and authority to subserve some
peculiar interest or right of the party complaining and
that he is being injured thereby, or other like situation.
*Havemeyer v. Superior Court*, 84 Cal. 327, s. c. 32 Am.
& Eng. Corp. Cas, 480 and notes ; *Newfoundland Railway
Construction Co. v. Schack*, 40 N. J. Eq. 222 ; 5 Thomp.
Corp., §§ 6828-6830.

The Capital City Water Co., a corporation authorized
by its charter to construct and operate a system of water
works for the purpose of supplying the city of Mont-
gomery and the inhabitants thereof with water for the
extinguishment of fires, the sprinkling of streets, manu-
facturing and domestic uses, &c., being adjudged by a
court of competent authority to have forfeited its char-
ter, and to be dissolved, its property and affairs passed
into the hands of certain persons, who were its directors
at the time of dissolution, and was held by them as
trustees for its creditors and stockholders.   Thereupon,
Weatherly filed this bill against said Water Co.
alone and its corporate name only, praying the appoint-
ment of a receiver to take charge of its properties, effects,
ways, works, machinery, books, papers, &c., &c., that such
receiver carry on the business of the corporation until
there could be a settlement of its affairs, and, finally, that
he pay off its creditors, sell its effects and distribute the
proceeds among its stockholders.   The complainant sues
in two capacities.   He alleges that he is a creditor, in
the sum of one hundred dollars, of the corporation, and
also that he is an inhabitant of the city of Montgomery,
and as such claims that under the contract existing be-
tween the corporation and the city at the time of the
dissolution he was and is now entitled to have a receiver
appointed to carry out the provision of that contract in
respect of supplying water to the inhabitants of said
city.

The bill so far as the relief prayed is sought to be
rested on the fact that complainant is a creditor of the
defunct corporation, is without the semblance of equity.
No necessity whatever is shown for marshalling the
assets of the company.   It is not alleged that the corpo-
ration is insolvent.   It is not averred that the statutory
trustees are unfaithful or incompetent or without power

or capacity to pay its debts, or that they are mismanaging or wasting the assets to such an extent as to endanger complainant's claim, or to an extent, nor even that they have failed upon demand made, or refused to pay his debt. For aught that is alleged complainant has only to present his claim to have it fully satisfied, or, in any event as to that, to bring his action at law to recover whatever sum is due him. It were a travesty of justice and a stigma upon judicial procedure and administration to take property worth hundreds of thousands of dollars out of the hands of trustees appointed by the law and subject it to the burdens and delays of a receivership at the instance of a person holding a doubtful and much disputed claim for one hundred dollars, when he at most has only to bring his suit at law and there establish whatever right he really has, and recover whatever sum of money he is entitled to recover at a minimum of cost and delay. Complainant as a creditor of respondent has no right under this bill.

In the other capacity in which complainant invokes the jurisdiction of chancery to the appointment of a receiver, *i. e.* as an inhabitant of the city of Montgomery, he is equally without right to maintain this bill against the dissolved corporation, which, as we have seen, is the sole respondent thereto. We deem it unnecessary to decide in this case whether such an inhabitant, by reason of his relation to the property of the Water Works Company after dissolution, is under any circumstances entitled to have a receiver appointed to carry on the business of the corporation. There are cases which hold that an inhabitant of a city who is specially damaged by the failure of a water supply company to comply with a contract similar to that existing between the Capital City Water Co. and the city of Montgomery before the dissolution of the former, may maintain an action in his own name against such corporation for the damages he has sustained.—*Paducah Lumber Co. v. Paducah Water Supply Co.* (Ky.), 7 L. R. A. 77. The conclusion, however, that a citizen of Montgomery would have a right of action under the contract existing between the city and the Water Works Company, while the latter lived, for the destruction of his property in consequence of the failure of the company to supply water as it had agreed with the city to do for the extinguishment of fires, does

not in itself involve and establish the right of such inhabitant to have a receiver appointed to carry on the business of supplying water to the city and its inhabitants. It might be that an action in his own name would lie for an injury peculiar to him, and in respect of which neither the city nor the inhabitants generally of the town have any interest, while no such right would exist in him in respect of a breach of the contract working injury to the city itself and all its people, and to him only in common with the rest. Of course every inhabitant was entitled to have water supplied to him upon the terms provided in the ordinance—contract between the city and the company; but it by no means follows that each inhabitant, or any number of individuals, had a right to have a receiver appointed to carry out the contract, the company failing therein, not only for his or their own benefit but, for the benefit of the city itself and all other inhabitants. It would seem that in such case *mandamus* would be the proper and an adequate remedy.—*Hangen v. Albina Light & Water Co.*, 14 L. R. A. (Ore.) 424.

But if such right and remedy be conceded to the individual citizen as against an existing corporation charged by contract with the municipality with the duty of supplying water to him as one of the inhabitants of the city, does it exist in favor of such citizen, or, indeed, in favor of the municipality itself *as against the corporation as a sole respondent after decree forfeiting its charter, and corporate powers, franchises and privileges*, and, in short, dissolving it and putting an end to its existence except for the limited purposes and time specified in the statute? Or, in other words, can a receiver be appointed to carry on the business of the dissolved corporation, or rather the business in which such corporation was engaged before dissolution, on a bill by whomsoever exhibited against the corporation alone? We are clear to the conclusion that such relief can not be granted upon such a bill. Upon dissolution, the corporation is essentially dead except for the general purpose of collecting its assets, paying its debts and dividing its property and money remaining after the satisfaction of its liabilities among its stockholders. For the purposes of the enterprises or business which it was chartered to carry on, it is as essentially dead as if we had no statute continuing

its life for the other specified purposes, as if, indeed, it had never existed at all; and this by the words of the statute which declare it to be non-existent for the purpose of carrying on its business.—Code of 1886, § 1690. Suits may be brought by its trustees and against it in its corporate name, but such suits only as pertain or are necessary or incident to the settlement of its affairs as of a business which absolutely ceased on the instant of its dissolution. The corporation as such has no more concern with or interest in the property once owned by it after dissolution than a dead man has in the estate he owned at the moment of death. The property after dissolution is in equity the property of the shareholders charged with the payment of debts, and by the statute committed to certain trustees to satisfy this charge and divide the residue among such shareholders. The trustees are invested with the legal title for the purposes of the trust and to an extent sufficient thereto, but no further. Contracts within corporate competency and of a nature to continue after dissolution and bind the property, are not abrogated by dissolution, but are of continuing efficacy against the successors to the defunct corporation in ownership of its property, assets and franchises. But the corporation after dissolution is, not only without authority, but, expressly forbidden to perform executory contracts involving the carrying on of its business, and the trustees considered merely as agents for settling the affairs of the concern are equally without power to perform such contracts, except to such extent as may be necessary or incident to the collection of its assets. If the property, franchises and effects of a corporation, considered apart from the corporate entity itself is at the time of dissolution charged by contract made by the corporation before dissolution with a public duty involving the carrying on of the business in which the corporation was engaged, it is not absolved therefrom by the forfeiture of the corporate charter, but continues to rest upon those who succeed to the title of the corporation. The duty follows the property and is imposed upon whomsoever succeeds to the property. Whether it rests upon the trustees as holders of the legal title, or upon the shareholders as beneficial owners, or upon both the trustees and shareholders combined, is a question not necessary to be gone into in this case. One

thing is assured: It no longer rests upon the corporation; and another with equal certainty follows, viz., that it devolves upon the trustees or upon the shareholders, one or both. If the duty is performed, it is the act of the owners of the property and not of the corporation. If it is not performed, it is not the default of the corporation but of the owners of the property. If anybody is to be coerced to its performance and to the carrying on of the business, it must be the owners and not the corporation. If there is to be an investigation as to whether the persons upon whom the duty rests have failed to perform and are in continuing default in respect thereto with a view to taking the property out of their hands and having the business carried on by the court through a receiver, the owners, upon whom the duty rests, who alone can be in default in regard to its performance, and not the corporation which is forbidden to perform it and hence can not be in default in respect of it, and which as to it is dead and wholly without interest in the property or the uses to which it is to be devoted, are obviously the proper and only necessary parties respondent to a bill to that end.

The City Council of Montgomery, having full capacity and authority thereto by an ordinance adopted in 1885, granted to one Howland, his associates and assigns, upon certain conditions and terms therein stipulated, "the right to lay down, use or maintain water mains, pipes and aqueducts, or other fixtures pertaining to furnishing a water supply to and in the city of Montgomery, and consenting that the same may be extended by them within the police jurisdiction of said city," and authorized said grantees to erect and maintain a pumping station, and to lay down, maintain and use water mains, pipes, aqueducts and other fixtures in and through any of the streets, alleys and public grounds of the city, under the direction of the city council. Said Howland and associates accepted this ordinance and thereby bound themselves in consideration of the rights and franchises granted by it, to construct and maintain a system of water works in said city to supply the city and its inhabitants with deep well water in accordance with and for the remuneration specified in the ordinance. The grant thus made by the city to Howland and associates and the contract thus made between the city and

12

Howland and associates, were by the latter assigned to the Capital City Water Co., a corporation. Water works were constructed, deep wells were bored, and mains, pipes, aqueducts, fixtures, &c., &c., were laid in the streets, alleys and public grounds of the city, and the business of supplying water to the city and its inhabitants was entered upon by the company, and carried on until its charter was adjudged forfeited and its dissolution as a corporation decreed. Upon this dissolution the property of the corporation by force of the statute was left in the possession of the persons who were its directors at the time and the legal title thereto was vested in them as trustees for creditors and stockholders for the purpose of, and to the extent necessary to, the collection of its assets, the payment of its debts and the division of its remaining effects among the shareholders. The beneficial interest in the property and the equitable title thereto subject to the satisfaction of liabilities was in the shareholders. With the rest, the water mains, pipes, aqueducts and fixtures laid and maintained in the streets, alleys and public grounds of the city and the franchise to use these appliances and the streets, etc., in which they were laid for the purpose of conducting water, became vested legally in the trustees and equitably in the shareholders as successors to the assignee of Howland and associates. This use of the streets, alleys and public grounds, and right of continued user thereof, was and is a property right, protected from destruction by organic guaranties, and the enjoyment thereof, the carrying on of the business of supplying water to the public through the user of public thoroughfares and grounds was and is a public enterprise or business, and the right so to do depends upon the grant by the city of the use of public property.—*Hangen v. Albina Light & Water Co.*, 14 L. R. A. 424, *supra*. As the appliances for conducting and supplying water laid in the streets and an easement in the streets for their use to that end pass as property to the trustees and shareholders, there must be a correlative duty upon the owners of this property and franchises to perform therewith the obligations and duties which Howland and his associates, for themselves and their assigns, took upon them as the continuing consideration moving from them to the city and the public as represented by the city for the public franchise

thus continuing in them, and this, of course, as well whether at a given time Howland and associates, or the corporation or the trustee or the shareholders or both the latter combined be the owners. Nay more, the contract between the city and Howland, itself, runs with the property, and is as obligatory upon the present owners as it was upon Howland before assignment by him and upon his assignee, the Capital City Water Co., before its death.—*People v. O'Brien et al.*, 111 N. Y. 1–66. So it is that we do not doubt the correctness of the declaration made *arguendo* in the case of *The Capital City Water Co. v. The State ex rel*, &c., 105 Ala. 433, referring to the property, franchises, &c., &c., of the appellee company, that ''the law is not wanting in means and instrumentalities for the administration of the affairs and the carrying on the business of this company *ad interim* and ultimately winding it up and passing its system of works into other hands,'' &c., &c. But, whether such means and instrumentalities may be invoked by a citizen or must be by the city alone, to secure a continued performance of the duty to supply water pending the winding up of the corporation's affairs, this much is certain, that the appeal to the courts must be made against the present owners upon whom the duty rests, and not against the dead corporation, upon which the duty not only does not rest, but which is expressly forbidden by statute to perform it; and such owners having the constitutional right to their day in court upon the inquiry whether they have failed in their duty in this regard, the property can not be taken from them and put in the hands of a receiver on a bill to which they are not parties. Hence our conclusion that the present bill is wholly without equity against the sole party respondent to it, The Capital City Water Company.

But apart from this fatal infirmity in respect of necessary parties respondent, the bill is bad upon another ground. It is not alleged in the bill that there has been or will be any failure on the part of the owners of the property or the persons acting for them, or persons in charge of the property, to carry on the business of supplying water to the city and its inhabitants; but the whole theory of the bill upon its face and as set forth by appellant's counsel is, that although water is being sup-

plied and will continue to be supplied to the city and to its inhabitants generally and to the complainant as one of them, yet that it is being so supplied by persons who, though in possession of the works, are without legal capacity or authority to carry on the business and continue such supply. There is no averment or pretense that complainant either as a creditor or as a citizen of Montgomery has sustained or will sustain any loss or injury in consequence of such unauthorized persons, being the statutory trustees, carrying on the business pending a settlement of the affairs of the defunct corporation. It is not conceivable on this state of facts that the complainant can have any interest at all in having a receiver appointed to do with this property precisely what is being done with it now and will continue to be done with it so far as he is concerned; and most assuredly upon these facts no appeal can be made by him which would challenge the exercise in his favor of the court's discretion in respect of the appointment of receivers.

We are dealing with the property and rights involved in this suit as they existed after and immediately upon the the dissolution of the corporation. The contract between the city and the *owners* of the water works was not abrogated by the decree of dissolution. The city's right to abrogate this contract on account of the default of the owners of the property for which the charter was adjudged forfeited, or upon other sufficient ground is not involved in this case, and nothing is decided with reference to it. Whether the contract be abrogated or not, however, the city has a right to insist upon a continuance of the water supply by means of the existing system of stations, mains, pipes, hydrants, &c., &c., pending the winding up of the affairs of the defunct corporation or for any necessary period short thereof; and if its discontinuance should occur or be threatened for lack either of inclination or legal capacity in the owners of the plant, the municipal authorities, and, it may possibly be, a resident of the city, would be entitled, upon proper bill filed *against the owners*, to a receivership to the end that the duty resting upon the property might be discharged.

The decrees of the city court refusing to appoint a

[Shahan v. Alabama Great Southern Railroad Co.]

receiver and sustaining the demurrer to the bill must·be affirmed.

Affirmed.