[S. F. No. 7101. Department One.—December 16, 1916.]

EDMUND A. ROSSI, Respondent, v. ARTHUR J. CAIRE et al., Appellants; AGLAE S. CAPUCCIO, Respondent.

CORPORATION—FAILURE TO PAY LICENSE TAX—FORFEITURE OF CHARTER —ACTION BY STOCKHOLDER—ORDERS FOR SALE OF AND DISTRIBUTION OF ASSETS—FINAL JUDGMENT—APPEAL.—In an action by a stockholder of a corporation which had forfeited its charter for failure to pay the license tax due under the act of March 20, 1905, to enjoin the defendants, the former directors, from carrying on the business of the corporation, and to compel them, as trustees thereof, to wind up its affairs, pay its debts, and distribute its assets to the stockholders, orders directing the trustees to distribute moneys in their hands, derived from the property of the corporation, proportionately to the stockholders, and to sell the remaining real and personal property of the company at public auction for cash, after giving a prescribed notice, are final judgments so far as the property to be disposed of under them is concerned and appealable as such.

ID.—REVIEW ON APPEAL—FINDINGS—SUPPORT OF INTERLOCUTORY JUDGMENT.—On such an appeal there may be a review of the previous proceedings including the sufficiency of the findings to support an interlocutory judgment which declared the status of the plaintiff as a stockholder, the number of his shares, his right to distribution, and directed the trustees to give notice to creditors and file an inventory of the assets of the corporation.

ID.—NATURE OF ACTION—DETERMINATION OF INTEREST IN REAL ESTATE. Such action is in equity to compel the trustees to perform duties imposed upon them by the law. It is not one for the determination

of an interest in real property formerly belonging to the corporation, within the meaning of section 5 of article VI of the constitution, requiring that such actions be commenced in the superior court of the county in which the real property is situated.

ID.—EFFECT OF FORFEITURE ON TITLE OF CORPORATE PROPERTY—RIGHT OF POSSESSION OF TRUSTEES.—Under the amendment of 1907 to the act of March 20, 1905 (Stats. 1907, p. 746, sec. 10a), the trustees of a corporation that had forfeited its charter for nonpayment of the license tax do not become invested with any title to the property formerly belonging to the corporation. They get by the forfeiture nothing more than the statute gives them, merely a power over the property, not the title. The corporation having ceased to exist, it is no longer capable of holding the title or the possession, the property belongs to the persons who were its stockholders at the time it ceased to be a corporation, and the right of possession passes to the directors by force of the statute making them trustees to settle the corporate affairs, since such right must be necessary for that purpose.

ID.—JUDICIAL CONTROL OF ACTION OF TRUSTEES.—A court of equity will not intervene to supervise or direct the proceedings of the trustees in settling the affairs of a corporation that has forfeited its charter for nonpayment of the license tax required by the act of 1905, unless they are guilty of neglect of duty or abuse of power.

ID.—DUTY OF TRUSTEES — SALE OF CORPORATE ASSETS — LOOKING FOR BUYER.—It was not a necessary part of the statutory duties of such trustees to find a buyer for the former corporate assets, or to sell the same, otherwise than in order to settle the corporate affairs. The fact that they did not look for a buyer is not, of itself, a breach of duty. It must also appear, in order to justify judicial interference to order a sale, that the interests of the parties and the settlement of the corporate affairs required a sale.

ID.—FAILURE TO DISTRIBUTE MONEYS ON HAND.—The failure of the trustees to distribute to the stockholders the excess of moneys in their hands, over the corporate debts, even if a dereliction of duty, would not authorize orders for the sale of the other corporate assets, but only an order directing the distribution of the surplus.

APPEAL from an order of the Superior Court of the City and County of San Francisco directing the distribution of certain money among the stockholders of a corporation and directing the defendants, as trustees, to sell the property of the corporation, and from an order refusing a new trial. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Joseph F. Bluxome, and Frank P. Deering, for Appellants.

D. Freidenrich, Ambrose Gherini, and Orrin K. McMurray, for Plaintiff and Respondent.

George J. Steiger, Jr., for Defendant and Respondent.

SHAW, J.—This case involves two appeals, one from an order made on April 3, 1914, directing the distribution of certain money among the stockholders of the Santa Cruz Island Company and directing the defendants, as trustees, to sell the real and personal property of said company at public auction, the other being an appeal from an order denying the motion of the appellants for a new trial.

The Santa Cruz Island Company was incorporated under the California law in 1869 for the purpose of carrying on the business of raising and selling cattle and acquiring such property, real and personal, as should be convenient for that business. Its principal place of business was San Francisco. It acquired a large amount of personal property and also Santa Cruz Island, situated in the Pacific Ocean, in Santa Barbara County, containing about fifty-four thousand acres of land. On the thirtieth day of November, 1911, by reason of its failure to pay the license tax due under the act of March 20, 1905, and amendments thereto, said company forfeited its corporate charter. At that time the defendants, Arthur J. Caire, Fred F. Caire, Albina C. S. Caire, Delphine A. Caire, and Aglae S. Capuccio, were the directors of said corporation. The capital stock of the corporation was fifty thousand dollars, divided into one hundred shares of the par value of five hundred dollars each. At the time of said forfeiture of the corporate charter one Amelie A. Rossi owned seven of said shares. The remaining shares were owned in various amounts by the defendants in the case. On May 23, 1912, Amelie A. Rossi transferred to the plaintiff, Edmund A. Rossi, her seven shares and all her interest as stockholder in and to the property and assets of the corporation. Thereafter the said plaintiff began this action. Its object, as shown by the prayer of the complaint, is to enjoin the aforesaid directors from carrying on the business of the corporation and to compel them, as trustees thereof, to wind up its affairs, pay

its debts and distribute its assets to the stockholders according to their interests and, specifically, that they thereupon distribute to the plaintiff seven one-hundredths of said assets.

Answers were filed raising issues of fact, the cause was tried, and on June 9, 1913, the court made its findings and conclusions of law, and thereupon gave an interlocutory judgment declaring that the charter of the company was forfeited on November 30, 1911, that the said directors thereupon became trustees of said corporation and its stockholders, charged with the duty of settling its affairs, that the plaintiff and the other stockholders were entitled to an accounting from the trustees of the property and effects of the corporation, and to have distributed to them, after payment of its debts, their respective shares of said property. The decree also directed the trustees to publish a notice to the creditors requiring them to present their claims within a time stated, and that all claims not so presented would be barred from payment out of the funds in the hands of the trustees, and that they file a true and correct inventory of all of said property. It declared that all other proceedings in the settlement of the affairs of the company and distribution of its property were reserved for subsequent determination.

Thereafter the plaintiff moved the court for an order requiring the said trustees to distribute to the plaintiff and other stockholders the surplus funds in their hands, as shown by their account filed December 19, 1913, and also directing them to sell the real and personal property of the corporation in their possession as trustees at public auction, after such notice and on such terms as the court should see proper. On April 3, 1914, the court, in pursuance of said motion, ordered the trustees to distribute thirty-five thousand dollars of the money in their hands, derived from the property of said corporation, proportionately to the respective stockholders, within twenty days thereafter, and further ordered that said trustees proceed to sell the real and personal property of said company, at public auction for cash, after giving a certain prescribed notice. It is from this order that the appeal first mentioned is taken. The order denying a new trial, from which the second appeal is taken, was made upon a motion of the defendants to vacate the interlocutory judgment and the orders aforesaid, and for a new trial,

on the grounds that the evidence is insufficient to support the findings and interlocutory judgment or the said orders, that each of them was against law, and for errors of law occurring at the trial.

Two preliminary jurisdictional questions are presented which must first be determined.

1. The plaintiff contends that the orders of April 3, 1914, directing the sale and distribution of the corporate property are not appealable. We cannot assent to this proposition. If the judgment of June 9, 1913, is regarded as a final judgment, as plaintiff in one branch of his argument on this point insists, then the orders of April 3, 1914, would be appealable as special orders made after final judgment. (Code Civ. Proc., sec. 963, subd. 2.) That judgment, however, merely declared the status of the plaintiff as a stockholder, the number of his shares, his right to distribution, and directed the trustees to give notice to creditors and file an inventory of the assets of the corporation. In its nature and effect it was preliminary and interlocutory, and not final. (*Gray* v. *Brennan,* 147 Cal. 355, [81 Pac. 1014].) The subsequent procedure by motion may have been unusual, but the result was the taking of further evidence and the making of orders for the distribution of the money on hand and the sale of the property. These orders were final in the same sense as any order for the sale of property or for the distribution of funds in litigation is final. The effect of the execution of the orders would be to take the property sold from the possession and control of the court and of the parties, and put the money distributed beyond the power of the court and out of the litigation, so that it could not be regained or affected by the subsequent proceedings. Such adjudications have always been held to be appealable as final judgments, because they are final so far as the property to be disposed of under them is concerned. (*Los Angeles* v. *Los Angeles etc. Co.,* 134 Cal. 123, [66 Pac. 196] ; *Anglo-California Bank* v. *Superior Court,* 153 Cal. 755, [96 Pac. 803] ; *Zappettini* v. *Buckles,* 167 Cal. 32, [138 Pac. 969].) We are of the opinion that these orders are appealable as final judgments, and further, that upon such appeal there may be a review of the previous proceedings including the sufficiency of the findings to support the interlocutory judgment.

2. The other objection to the jurisdiction is that the action is for the determination of an interest in real property situated in Santa Barbara County, and that, under section 5, article VI, of the constitution, jurisdiction thereof is vested exclusively in the superior court of that county, and that the action will not lie in the superior court of the city and county of San Francisco. The point is not tenable. The action is not for the determination of an interest in real property, but is an action in equity to compel the trustees to perform duties which it is claimed are imposed upon them by the law. The determination of the interests of the parties is only incidental to the relief which is the main object of the action, that object being to place the trustees under the control and supervision of the court and compel them to proceed in the execution of their trust. It is not the determination of an interest in specific property, but only of the number of the shares of the several stockholders in the corporate assets of every description which are to be administered by the trustees for their benefit.

3. The findings do not show any ground for the intervention of a court of equity to supervise or direct the proceedings of the trustees. They state the facts relating to the incorporation of the company, the approximate value and character of its property, the amount and number of shares of its capital stock, the names of the stockholders and the number of shares held by each, the forfeiture of its charter as aforesaid, and that the defendants were at that time its directors. They then proceed to state that when this suit was begun the debts of the corporation amounted to ten thousand dollars, and the trustees had on hand seventeen thousand dollars in money of the corporation; that they did not apply the funds on hand to the payment of the debts, nor distribute the surplus thereof to the stockholders, nor make any effort to find a buyer for the real property; that plaintiff did not, before beginning the action, demand of said trustees that they wind up the affairs of the corporation and distribute the property thereof to the stockholders, and, further, that said trustees "have not since the forfeiture of the charter of said corporation conducted or carried on the business of said corporation, and said trustees have not neglected their duties. They have made sales of personal

property of said corporation, for cash, which they now have on hand."

The finding that the trustees have not conducted or carried on the corporate business since the forfeiture, was apparently made in response to a charge in the complaint that since the forfeiture they had conducted, and still continue to conduct, the corporate business in the same manner as before the forfeiture, with the intent to reinstate the corporate existence under an enabling act which it was expected would be enacted by the legislature, and that this was done without the consent of the plaintiff or his assignor. The finding disposes of that charge.

There is also a finding that Amelie A. Rossi, before transferring her seven shares to the plaintiff, had requested the trustees to convey to her an undivided seven one-hundredths of the real property of the corporation, claiming at the time that the personal property was ample for the payment of the corporate debts and of all the expenses of the settlement of its affairs.

It does not appear that at the time the request last mentioned was made the trustees had sold any personal property, or had on hand enough money to pay the debts and expenses. Consequently, even if we assume for the moment that the title to the land was vested in the trustees, and that a conveyance from them to the stockholders was necessary to clothe them with the title, the finding that the trustees have not neglected their duties necessarily implies that the affairs of the company were not then in a condition to make it their present duty to convey the title to the stockholders, and that the failure to convey was not a breach of their duty as trustees.

The amendment of 1907 to the act of 1905 (Stats. 1907, p. 746, sec. 10a) provides that upon the forfeiture of a corporate charter thereunder the directors then in office "are deemed to be trustees of the corporation and stockholders . . . and have full power to settle the affairs of the corporation." It also gives them power to maintain and defend actions pending by or against the corporation and to take all legal proceedings necessary to fully settle the corporate affairs, and provides that they may be sued by any person having a claim against the corporation.

The directors of a corporation, before its dissolution, do not, by virtue of their office, hold or possess any title to or interest in the property of the corporation. The title is wholly vested in the corporation. The above statute providing that, upon forfeiture of the charter, the directors shall become trustees for the corporation and its stockholders to settle its affairs, does not purport to invest the trustees with any title to the property formerly belonging to the corporation. They get by the forfeiture nothing more than the statute gives them, and that is merely a power over the property, not the title. The corporation having ceased to exist, it is no longer capable of holding the title or the possession; the property belongs to the persons who were its stockholders at the time it ceased to be a corporation (*Havemeyer* v. *Superior Court*, 84 Cal. 362, [18 Am. St. Rep. 192, 10 L. R. A. 627, 24 Pac. 121]), and the right of possession passes to the directors by force of the statute making them trustees to settle the corporate affairs, since such right must be necessary for that purpose.

The duties of the trustees are measured by their powers and by the principles of law and equity applicable to the conditions. They have in their possession property belonging to others, they are bound to settle the affairs of the former owner, and they have all the power to deal with and dispose of the property that is necessary to accomplish that object. The interests they are to serve are the interests of the stockholders to whom the property belongs, and of the creditors of the defunct corporation whose debts constitute a paramount charge upon that property. The forfeiture declared by the statute takes place instantly upon the failure to pay the license tax within the time allowed. It may strike the corporation dead while it is a going concern with large operations or contracts in process of completion which, if not prosecuted to the end, may entail great loss to the stockholders. It may occur while debts are owing but not yet due or payable. The property may be in a condition reasonably requiring further and continued work for its preservation or to make it valuable. The obvious purpose of this statute, in view of these circumstances, is, as was said in the Havemeyer case above cited, "to leave the whole matter of liquidation and distribution to the exclusive control of the directors of the corporation in office at

the time of dissolution." (p. 365), and to render it unnecessary and improper for a court to intervene in their proceedings, or to supervise the same in any particular, unless they are guilty of "neglect of duty or abuse of power" (p. 367). In order to justify the interference of a court, says the supreme court of Alabama, the mere fact of dissolution, or forfeiture of the charter, is not enough; the facts appearing "must be of a character to show that the trustees are incompetent, or unfaithful, or are mismanaging the property to the injury of the complainant, or are without power and authority to subserve some peculiar interest or right of the party complaining and that he is being injured thereby." (*Weatherly* v. *Capital etc. Co.*, 115 Ala. 172, [22 South. 142].) This language was used with reference to an application for the appointment of a receiver to take charge of and administer the corporate assets, as also was the language in the Havemeyer case, but the same principles apply to any application for the intervention of the judicial power to supersede, supervise, or control the powers conferred by the statute upon the trustees.

It was not a necessary part of the statutory duty of the trustees to find a buyer for the land, or to sell the same, otherwise than in order to settle the corporate affairs. If they had money to pay all debts and expenses and all other corporate affairs were disposed of, it would be no abuse of their discretion if they merely delivered the possession of the land to the stockholders as tenants in common according to their interests, leaving them to do with it what they pleased. The fact that they did not look for a buyer is not, of itself, a breach of duty. It must also appear, in order to justify judicial interference to order a sale, that the interests of the parties and the settlement of the corporate affairs required a sale. This does not appear.

As to the finding that the trustees did not distribute to the stockholders the excess of the money in their hands over the debts, it is to be observed that there is no finding that the debts were then due or payable, or that the excess would not be necessary to pay the expenses of carrying on the affairs to that date and of settlement. Also that even if this were a dereliction of duty, it would not authorize the subsequent proceedings and orders for a sale, but only an order directing the distribution of the surplus.

The respondents rely on the decision of the supreme court of the United States in *Mason* v. *Pewabic M. Co.*, 133 U. S. 58, [33 L. Ed. 524, 10 Sup. Ct. Rep. 224], to the effect that the rights of a stockholder in the corporate assets, upon the dissolution, do not differ from those of each partner, on a dissolution, to have the partnership property converted into money by a sale, even though a sale may not be necessary to pay the debts. The remark was made in the course of discussion and with reference to facts unlike those of the case at bar. There the corporation had dissolved by expiration of its charter. The directors in office had disregarded this fact, had carried on the business of the corporation for eleven months, had levied and collected an assessment of eighty-eight thousand dollars on the stock, and in pursuance of a vote of the holders of a majority of the stock were about to transfer all the property to a new company with the intent to compel the minority stockholders to exchange their stock for a like amount of stock in the new company, without their consent and against their will. The suit was by the minority stockholders to enjoin this transfer and the proceedings to that end, to have a receiver appointed, and to compel a settlement of the corporate affairs. In such case it is doubtless true that the stockholders might ask for and obtain an order for a sale of the property. The decision is authority for the proposition that neither the trustees nor the majority stockholders can compel the minority to join in the formation of a new corporation and transfer their shares to it, but it is not applicable to the point under discussion. The trustees there were acting in violation of the duties of their trust. The case is not applicable here.

The consequence of these conclusions is that the interlocutory judgment and all the subsequent proceedings and orders are unsupported by the facts and without authority. On the facts found the judgment should have been for the defendants.

The briefs discuss at length the question whether or not it was within the power of the trustees to relieve the corporation from the forfeiture and reinstate it as a corporation, without the consent of all the stockholders, by paying the license taxes, as provided in the amendment of section 6 of the act, which took effect August 10, 1913, after the

entry of the interlocutory judgment.    (Stats. 1913, p. 513.)
A supplemental answer was filed by appellants alleging such
reinstatement.    The conclusions we have reached render it
unnecessary to consider this question.

The orders appealed from are reversed and the interlocu-
tory judgment and all subsequent proceedings vacated.

Sloss, J., and Lawlor, J., concurred.