### HAZARD et al. v. PARK et al.

(Circuit Court of Appeals, Eighth Circuit. October 29, 1923.)

#### No. 6385.

1. **Corporations** ☞630(1)—**Suspension of corporation for failure to file reports held not to preclude foreclosure of mortgage against it.**

The action of the Secretary of State of Colorado, in declaring a corporation defunct and inoperative for failure to file its annual reports, as provided by the state statute, which also provides that the suspension may be lifted at any time by the filing of such reports and the payment of the annual fees, with a small additional fee, does not effect a dissolution of the corporation, which prevents the holder of a mortgage on its property from foreclosing the same.

2. **Equity** ☞66—**Judgment** ☞456(1)—**Defendants held to have no standing in equity to question mortgage, without offering to reimburse complainant, and also barred by laches from attacking validity of mortgage or foreclosure.**

Where at the time defendants obtained a judgment against a corporation there was of record a mortgage executed by the corporation to secure bonds, which mortgage was later foreclosed by complainant, a bona fide holder of the bonds, who purchased the property at foreclosure sale, but defendants took no action on their judgment until after it had become dormant under the statute and ceased to be a lien, *held*, that they had no standing in equity to question the validity of the mortgage or foreclosure proceedings, without offering to reimburse complainant, and that whatever remedy they may have had was barred by laches.

Appeal from the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Suit in equity by G. F. Park and others against Morris Hazard and others. Decree for complainants, and defendants appeal. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

J. C. Dunn, of Denver, Colo., for appellants.

W. B. King, of Denver, Colo. (A. D. Quaintance and C. B. Quaintance, both of Denver, Colo., on the brief), for appellees.

Before LEWIS, Circuit Judge, and VAN VALKENBURGH and KENNEDY, District Judges.

KENNEDY, District Judge. The appellees, as plaintiffs in the court below, sought to restrain the defendants from proceeding further in the matter of securing a sheriff's deed under a judgment theretofore obtained by appellants, defendants in the court below, against the Fostoria Gold Mining Company, under which judgment an attempted levy and sale had been made and certificate of purchase delivered to defendants, covering certain mining property formerly held and owned by said mining company in the county of Gilpin, state of Colorado, and further seeking to have the said judgment, levy, and certificate of purchase declared null and void, so far as they affect the title to the premises in controversy.

The defendants filed an answer and cross-bill, in which the gist of their defense and affirmative relief sought was substantially the claim that the judgment in their favor is superior to the right and title of the plaintiffs in and to the premises. At the trial, and upon motion of the plaintiffs, a considerable portion of the defendants' cross-bill was stricken out, and, defendants refusing to plead further, the trial proceeded, resulting in a decree in favor of the plaintiffs, and an appeal by defendants brings the matter here.

It is the supposition at least of the defendants, appellants here, that the action of the trial court in striking a substantial portion of the defendants' cross-bill raises certain questions of law which are presented in appellants' brief, and in respect of which it is claimed the trial court erred. For the purposes of discussing these questions, in the view which the court takes in the case, it may be assumed that the whole of defendants' pleading remained intact, and in this situation to consider what rights the defendants had, and what remedies they might in equity demand at the hands of the trial court. For a proper discussion of the legal questions, a brief review of the facts will be necessary.

Prior to September 26, 1904, the Fostoria Gold Mining Company was the owner of a certain mining claim in Gilpin county, Colo. On the above-mentioned date the mining company executed its trust deed to the public trustee of Gilpin county to secure the payment of $30,000 in bonds, to be due and payable October 30, 1909. These bonds were issued and delivered to various holders, one of whom was the plaintiff, Susan R. Park. These bonds were not paid, and Susan R. Park called upon the trustee to foreclose the trust deed, and, not being able to secure any action on his part along this line, herself instituted a proceeding in the United States District Court of Colorado to foreclose the same. This action was instituted in 1916, and in December, 1917, a decree of that court was entered in her favor, and a sale of the premises ordered. A special master was appointed, who advertised and sold the property at public sale in Gilpin county; the plaintiff Susan

R. Park becoming the purchaser of the premises covered by the trust deed. The sale was thereafter confirmed by the court, and a deed in pursuance thereof delivered to the purchaser. She thereafter conveyed an undivided nine-tenths interest to the plaintiff G. F. Park, and since said time they have purported to hold the said premises as joint owners.

The Hazards attempted as early as 1905 to impress a lien on the property involved, but this right was denied by the Supreme Court of the state of Colorado. In September, 1910, however, the Hazards secured a judgment against the mining company in the state court, and in October following caused a transcript of the judgment to be filed in the office of the county clerk of Gilpin county, at which time the records of that county showed that the mining company was the owner of the premises in controversy. Nothing further was done under the judgment of defendants until in October, 1921, when an execution was sued out of the district court of Gilpin county, under which the sheriff made a levy upon the property, offered the premises for sale at public auction, and at this sale the Hazards became the purchasers for an amount in excess of $7,500, and received from the sheriff the certificate of purchase hereinbefore referred to, and were threatening to secure a deed from the sheriff upon said certificate of purchase at the time the action was begun in the court below.

The question to be determined is: Were the rights of the defendants in and to the premises superior to the rights of the plaintiffs; or, more properly speaking, did the pleading of the defendants in the court below assert such a superior right as in equity should have entitled them to recognition and relief? In the first instance, it may be noted, in passing, that at the time this suit was instituted by plaintiffs the defendants had no lien upon the premises by virtue of their transcript of judgment, by reason of the fact that no execution had been issued thereon within the time prescribed by statute; or, in other words, any lien by virtue of said judgment, had expired. Compiled Laws of Colorado, § 5898.

[1] One of the chief contentions of the defendants, as appellants here, and a question presumably raised by the action of the trial court in striking defendants' pleading, is that the judgment of foreclosure of the trust deed was null and void. The basis of this assertion is that prior to the filing of said foreclosure suit, under a statute of the state of Colorado, the mining company had been declared to be a defunct and inoperative corporation, on account of failure to file annual reports as required by statute, and that this action was equivalent to a dissolution of the corporation under another section of the Colorado statute, which prescribed that, in the event of a dissolution, the then directors are constituted the trustees of the property for the benefit of the creditors and stockholders of the corporation. This action of declaring the corporation defunct and inoperative was taken by the secretary of state in 1913. Service in the foreclosure suit was made upon a stockholder of the corporation within the state of Colorado, the marshal certifying that the president or other chief officer or general agent of the corporation was not found in the state. Such service is permitted by the Colorado statutes. Was the action of the

secretary of state under the statute, in declaring the corporation defunct, equivalent to a dissolution in the sense that no suit could be instituted against the corporation? This question must be answered in the negative. The evident intent of the Colorado statute is to penalize a corporation for failure to file its reports by prohibiting it from doing business in the state during the period of such failure, for the reason that the statute likewise provides that such suspension may at any time be lifted by filing such reports, paying the annual fees prescribed to accompany the same, and an additional fee of $5. Certainly, if a corporation had beeen dissolved, it could not be resurrected and reinstated as an entity, in such a free and easy manner. The theory that the service in the foreclosure suit was good is further strengthened by the provision of the Colorado statute, which provides:

"The dissolution for any cause whatever, of corporations created as aforesaid, shall not take away or impair any remedy given against such corporations, its stockholders, or officers, for any liabilities incurred previous to its dissolution." C. L. Colo. § 2300.

This section has been construed by the Supreme Court of Colorado in the case of Kipp v. Miller, 47 Colo. 598, 108 Pac. 164, 135 Am. St. Rep. 236. Even though the action of the secretary of state, therefore, in declaring the corporation defunct, should be held to be equivalent to a dissolution, the rights of the parties whose claims accrued prior to the dissolution are saved and protected by statute. The rights of the bondholders in the foreclosure suit accrued in 1904, and the corporation was not declared defunct until 1913.

[2] In addition to the foregoing, the entire foreclosure proceeding appearing in the record here discloses that the issuance of the trust deed and the bonds were regular, and that the bonds themselves were issued for a valid consideration; the money from their sale being actually received by the mining company. The plaintiff Susan R. Park, being the owner of these bonds, actually purchased for a valid consideration, had the undoubted right to seek and secure the foreclosure of the trust deed, and to become the purchaser at the sale of the property; the decree of foreclosure expressly granting such right. It must therefore follow that the decree of foreclosure and the subsequent proceedings thereunder were in all respects valid, and that the court had jurisdiction of the proceedings.

As to the allegations of the cross-bill, charging irregularities, fraud, and conspiracy in connection with the bond issue, it need only be said that such allegations are so general in character as to amount to mere conclusions of law, and clearly insufficient to lay the foundation for any relief. These allegations, in connection with the admitted facts imputing knowledge to the defendants of open and unconcealed transactions, can avail defendant nothing. Woods v. Carpenter, 101 U. S. 140, 25 L. Ed. 807.

Even should the judgment be set aside for want of jurisdiction, the defendants would still be confronted with the trust deed and bond issue outstanding, which they have insufficiently attempted to challenge; but in addition they have in no way offered to restore and recompense the bondholders or the purchaser of the property at the foreclosure

sale, for the amount expended in the purchase. It needs no further citation of authority than to repeat the old maxim in equity that "he who would seek equity must do equity," in asserting the insufficiency of defendants' cross-bill, as it nowhere appears that they have offered to make the plaintiff whole.

The principal portion of the cross-bill stricken out was directed to an attempt on the part of the defendants to explain the long delay in seeking relief against the trust deed and its foreclosure. The pleading of the defendants in this respect is by no means sufficient. It appears affirmatively that the trust deed had been a matter of public record for a period of six years before the defendants secured the money judgment against the mining company; that defendants' judgment remained of record without the issuance of an execution therefor for such a length of time that it became dormant under the statute; that the trust deed was foreclosed and a public sale had of the premises in the county where the property was located, and in fact under the very noses of the defendants, and yet there was no attempt on the part of the defendants to challenge the validity of the trust deed, the bond issue, or the foreclosure proceeding until the present action was instituted in February, 1922. All of these transactions constituted notice, with which the defendants undoubtedly must be charged, and they are in equity chargeable with laches. This doctrine is more strongly enforced in cases where the subject of the litigation is mining property. Sturm v. Wiess (C. C. A.) 273 Fed. 457.

For the reasons stated, the decree of the trial court will be affirmed.

☰☰For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes