These three suits were consolidated by order of this court entered January 12th, 1925. The parties are the same in each suit and the suits have a common object, namely, the appointment of a receiver for the defendant corporation. On the return of the rule to show cause the defendants Alice Oppenheim and George J. Baumann, surviving executors and trustees, c., filed answers and counter-claims in each suit. The defendant corporations have not answered. The complainant has also moved to strike out the counter-claims on the ground that they present legal and not equitable claims.
The three defendant corporations were organized under the General Corporation act of this state on July 1st, 1916. According to reports on file in the office of the secretary of state the companies organized by the election of three directors — a president, secretary and treasurer. The complainant, Walter Reade (formerly Walter Rosenberg), and his father, Henry Rosenberg, were each owners of one-half of the capital stock of each company. This is the situation at present, except that the stock then owned by Henry Rosenberg is now held by his executors and trustees, he having since died. The companies own valuable lands in the cities of Long Branch and Asbury Park, and operate theatres erected thereon. Prior to April 30th, 1917, the complainant and his father managed these three corporations, and from all that appears in the pleadings the legal requirements respecting corporate management were observed. No directors' or stockholders' meetings have, however, been held since April 30th, 1917. On that date these parties, father and son, having disagreed respecting their previous management, entered into a written agreement under the terms of which the complainant became the active manager of the three corporation "subject to theapproval of the board of directors of said severalcorporations." *Page 284 
Under this agreement the complainant became entitled to receive all of the net profits of the company and all of the dividends earned or declared on all of the stock of the companies issued and outstanding. He agreed to pay to his father, in lieu of dividends, the sum of $10,000 a year in equal monthly installments of $833.33 during the term of the agreement. He further agreed to pay all of the expenses of the operation of the three companies, assume and pay all liabilities incurred by them, pay all debts, assessments, interest on mortgages and other charges, pay all debts and liabilities of the corporations then existing, save his father harmless from any liability thereon and to manage the business of the corporation so "as not to jeopardize the capital stock or interests of the party of the first part" (Henry Rosenberg was the party of the first part). The agreement also provided that the property of the several corporations should not be sold, mortgaged, leased or encumbered by either party to the agreement or by the officers or directors except upon consent and vote of three-fourths of the stock of each corporation. This provision of the agreement was valid and binding as between the parties, irrespective of its validity under the Corporation act or the charters of the companies. All improvements or additions to the land and buildings of the companies were to be at the expense of the complainant, except that in the event of a new theatre being erected on a vacant lot of one of the companies in Asbury Park, it was provided that on the termination of the agreement Henry Rosenberg should pay to the complainant one-half of the then value of the building. Other provisions respecting the rights and liabilities of the parties were contained in the agreement but are immaterial to this issue and need not be now mentioned. The agreement provided that it should continue for a term of ten years and that it should be binding upon the heirs, executors, administrators and assigns of the parties.
Henry Rosenberg died on February 11th, 1923, leaving a last will and testament in which he appointed his widow, Anna Rosenberg, since deceased, Alice Oppenheim and George *Page 285 
J. Baumann, as executors and trustees. The will creates several trusts, refers specifically to the stock in these three corporations and recommends that the trustees retain that stock, but suggests that in the event that a sale of the stock seems advisable, it be sold as a "lump sum." The complainant has, apparently, performed his obligations with respect to management of the corporations, except that he neglected to pay the franchise tax assessed against the various companies for 1917, 1918 and 1919, and in 1920 all three of the corporations were dissolved by proclamation of the governor for non-payment of the franchise tax for 1917. The bills of complaint in these several suits were filed on October 19th, 1925, and on October 21st, 1925, the franchise taxes assessed against these companies for the years 1917, 1918 and 1919 were paid by the complainant. The bills recite that these taxes "are being paid." Since the death of Henry Rosenberg there has been no meeting of the stockholders or directors of the corporations and the vacancies in the boards of directors and in the various offices caused by his death have not been filled. The complainant is, apparently, the sole surviving officer and director of the company. The complainant alleges in his bills that he has been advised that under the circumstances above detailed he has become a trustee in dissolution of the corporations. The bills of complaint also each contain the following clause:
"9. That complainant has applied to said surviving executors and trusteees to sell to him their interest in said corporation, but the price which said surviving executors and trustees have fixed is so much in excess of the fair value thereof that complainant is unwilling to pay same. Complainant has suggested that the assets of said corporation be sold, but said surviving executors and trustees refuse to join in a sale."
The bills pray for the appointment of a receiver to convert the assets of the corporations into cash and wind up their businesses as on dissolution.
It seems to me that this is nothing more nor less than a bald attempt on the part of the complainant to compel the *Page 286 
executors and trustees of his father's estate to sell to him at his own price the capital stock of these various companies owned by the estate under penalty of a receivership for their refusal. The sole ground of this application is the dissolution of these three companies by proclamation of the governor for non-payment of taxes. This dissolution resulted from the complainant's own default and neglect. Under the terms of the agreement above referred to, it was his duty to pay the franchise taxes and to preserve the corporations and to protect the stockholders in every way, so that their interests would not be injuriously affected by his management. Having defaulted in the payment of the franchise taxes and the corporations having been dissolved by the governor on that account, it became the duty of the complainant to apply, in the manner prescribed by statute (4 N.J. Comp. Stat. p. 5295 § 518), for reinstatement of the corporations, and that he may be compelled to do this is one of the objects of the counter-claims. The bills advance both a reason and an excuse for this application. The reason is the dissolution of the corporations by proclamation of the governor, which, to my mind, is no reason at all under the circumstances of this case. It is not every case of dissolution of a corporation which requires the appointment of a receiver. The court of chancery may appoint a receiver in a proper case (2 Comp.Stat. p. 1636 § 56), but this provision of the statute is not mandatory. Each application must stand on its own bottom. Receivers are appointed in cases of insolvency almost as a matter of course, but here there is no suggestion of insolvency. In fact, from all that appears in the pleadings it may be assumed that these corporations are perfectly solvent and have no debts. The excuse for the filing of the bill is that offered in paragraph 9 above quoted, that the executors and trustees of complainant's father's estate will not sell the stock to him at his price. I consider this a poor excuse. In short, the complainant is seeking to take advantage of his own default and by reason thereof to compel his father's estate to sell out to him at his own figure. *Page 287 
Complainant attempts to bring this case within the rule ofJackson v. Hooper, 76 N.J. Eq. 592, but, in my judgment, that rule has no application here. In that case there was an agreement between the two stockholders owning all the stock of the corporation that the corporation should be treated and conducted as a partnership and that the directors other than these two parties should be merely nominal directors and have no control whatever of the business of the company. The court of errors and appeals held that a court of equity has no power to take corporate property into its control as upon the dissolution of a partnership, but that the rights of the parties must be administered as shareholders in the corporation and not as partners, and that the agreement that the so-called "dummy" directors should have no voice in the management of the company's affairs was unenforceable. But in the case sub judice there is no suggestion that this is a partnership agreement, nor that the rules applying to partnerships should govern. The agreement between the complainant and his father did not contemplate a disregard of the provisions of the Corporation act with respect to corporate management, nor was the agreement illegal under that act. The management of the various corporations by the complainant was expressly subject to the approval of the boards of directors of the several companies, and it was specifically provided in the agreement that the complainant in such management should do nothing which would "jeopardize" the capital stock or interests of the other stockholders. I think it is clear that the agreement contemplated a maintenance of the corporate organizations by the complainant, and it is not his privilege to use his own default in this regard as a basis for a receivership on his own application. The business of these corporations, notwithstanding their dissolution by proclamation of the governor, has been and still is being conducted as usual under the management of the complainant. The corporations are not dead (Held v. Crosthwaite, 260 Fed. Rep. 613); they merely sleep. They are practically in a state of coma from which it requires the exercise of no miraculous *Page 288 
power to revive them. The procedure for their revival is plainly indicated by the statute. The complainant is now attempting to forestall a revival and to effectuate a voluntary dissolution of the corporations through the medium of a receivership in the court of chancery. A voluntary dissolution may be had only in the method prescribed by statute, or, if through the courts, where it appears for the best interests of the stockholders and creditors; but a court of equity will not permit the dissolution of a corporation even on application of a majority of the stockholders where such dissolution would constitute a fraud on the minority.Riker v. United Drug Company, 79 N.J. Eq. 580. Here the application for dissolution is by a holder of less than a majority of the stock and it appears that it is a clear attempt to perpetrate a fraud on the remaining stockholders. I feel that under the circumstances I am obliged to deny the appointment of a receiver and also the motion to strike out the counter-claim, and an order will be entered to this effect.