J. H. G. WOLF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2970. Promulgated October 31, 1927.

1. Year in which loss was sustained determined.
2. The action of the respondent in not determining petitioner's tax liability on the community-property basis is approved.

*W. W. Spalding, Esq.,* for the petitioner.
*L. L. Hight, Esq.,* for the respondent.

This is a proceeding for the redetermination of deficiencies in income tax of $2,650.12 and $1,450.11 for the years 1919 and 1920, respectively. The deficiency for 1919 results in part from the action of the respondent in refusing to allow a deduction of $16,702.34 claimed by the petitioner as a loss. For both 1919 and 1920 the respondent refused to determine the petitioner's tax liability on the community-property basis.

FINDINGS OF FACT.

During the years 1919 and 1920 the petitioner was a resident of California. Since the filing of the petition he has died.

The petitioner acquired 67½ per cent of the stock of the North American Exploration Co., a corporation organized in 1909 under the laws of California, at a cost of $9,810. It was stipulated that the value of the stock on March 1, 1913, was slightly greater than cost. The corporation's funds were exhausted and it ceased to function in 1910 or 1911. The petitioner advanced to the corporation $12,926.92 of his own money, no part of which was ever recovered by him. On March 4, 1916, the corporate charter was forfeited due to the failure to pay the state license tax and was never revived. The corporation had no liabilities at this time except its liability, if any, to the petitioner for money advanced to it. Neither the corporation nor the trustees filed income-tax returns for the years 1917, 1918, or

1919. It was decided that the corporation should go out of business and that its assets, which consisted of 7,644 shares of the stock of the Defender Development Co., 25,001 shares of the stock of the Exploration Oil Co., and some office furniture of negligible value, should be distributed to the stockholders in proportion to their stock holdings.

The North American Exploration Co. distributed to its stockholders in proportion to their holdings the stock held by it in the Exploration Oil Co., surrendered the certificate or certificates therefor, and requested that company to issue to the stockholders certificates for the stock distributed to them. This was done about September, 1919.

Since no one with authority connected with the Defender Development Co. could be found to transfer on the books of that company to the stockholders of the North American Exploration Co. the stock held by that company in the Defender Development Co., the stockholders agreed among themselves that each had an interest in the certificate of stock of the development company held by the Exploration Co. in proportion to his holdings in the Exploration Co.

Upon liquidation of the assets of the North American Exploration Co. the petitioner received assets which had a value when received of $1,833.33. This constituted the entire amount received by the petitioner on the liquidation of the corporation.

The directors of the corporation were Wolf, Dorsey Ash, and Mary Meyer. The latter owned only a sufficient amount of the stock to qualify as a director. The stockholders of the corporation were Wolf, Dorsey Ash, Mrs. Andrew Marvell—sister-in-law of Ash, and Mary Meyer.

OPINION.

TRAMMELL: The petitioner contends (1) that for the year 1919 he should be allowed a deduction of $16,702.34 representing a loss sustained on the stock of the North American Exploration Co. and (2) that the respondent erred in refusing to compute the petitioner's tax liability on the community-property basis.

The respondent contends that whatever loss the petitioner sustained was sustained in 1916 and that no error was committed in treating for tax purposes the entire community income as the income of the petitioner.

The petitioner acquired 67½ per cent of the stock of the North American Exploration Co. at a cost of $9,810. He also advanced to this company $12,926.92, of which he contends 67½ per cent, or $8,725.67, represented an assessment against him and an additional cost of the stock, making a total cost of the stock to him of $18,535.67. Upon liquidation of the company he received assets having a value

of $1,833.33 and it is the difference between this amount and $18,535.67 that the petitioner is contending for as a deduction.

With respect to the $12,926.92 advanced by the petitioner to the North American Exploration Co., the record does not disclose when the amount was advanced or the circumstances under which it was advanced. Whether this amount or any part of it represented an assessment against the petitioner on the stock owned by him is a matter of fact to be established by evidence. We can not assume that it did. It was designated by the petitioner as an advance. Is the evidence, taken as a whole, sufficient to establish the fact that the advance was in the nature of an assessment on the stock? We have the testimony of Dorsey Ash who was one of the directors and secretary and treasurer of the North American Exploration Co. He was asked, " Do you recall any discussion at any time of any liability of the corporation (the North American Exploration Co.) to Mr. Wolf? " He replied, " That is a pretty hard question to answer. Mr. Wolf carried on operations in connection with the Defender Mine in his own name but the understanding was that they were for the benefit of the Company." Q. " When? " A. " I couldn't give you any details."

Wolf owned no stock in the Defender Development Co., all of its stock being owned by the North American Exploration Co.

If the advance was an assessment on the stock it would appear that it was an assessment on the stock of the Defender Co., which corporation apparently received it. Assessments are made only against stockholders and the stock of the Defender Co. was owned by the Exploration Co. and not by Wolf. It was stipulated, however, that Wolf made the advance to the North American Exploration Co. There is no evidence that any other stockholder made or was called on to make any advances to that company. The fact that no part of the advance was ever recovered by Wolf might indicate that the amount was not considered as a loan. The assets of the corporation would have been liable for the amount before distribution to the stockholders if it had been a loan which was unsatisfied at that time. This is a circumstance and the only evidence from which the conclusion might be drawn that the advance was not a loan but an assessment on the stock, but this is not to our minds sufficient evidence upon which to reach the conclusion that the advance was an assessment. It might have been a gift to the corporation, or it might have been a loan which was satisfied by forgiveness. If it had been an assessment against the stock it would seem that either the petitioner or some witness would have been in a position to testify to the fact or to testify to facts from which we could draw that conclusion. The question, however, is left entirely to infer-

ence. We could as well infer that the advance was a loan and that it was satisfied by forgiveness, or that it was intended only as a gift. If it were a loan which had not been satisfied by forgiveness, it is governed by the statutory provision relating to worthless debts. There is no evidence, however, that it was ascertained to be worthless and charged off during the taxable year involved. All the facts relating to the assets of the corporation were apparently fully known prior to the taxable year. In any event, there is no evidence of an ascertainment of worthlessness during the year or that it was charged off at any time.

From a consideration of the evidence, we are not convinced that the so-called advance was an assessment against the stock. It can not, therefore, be added to the cost of the stock in determining the deductible loss.

We have found that on March 4, 1916, the charter of the North American Exploration Co. was forfeited because of failure to pay the state license tax and was never revived. This forfeiture arose under the statutes of the State of California of 1915. Act 756, approved May 10, 1915, Stats. 1915, p. 422 (Deering, General Laws of California, 1915, p. 208), provides for the payment of an annual license tax (section 4) ; "At the hour of 6 o'clock p. m., of the Saturday preceding the first Monday in March of each year the charters of all corporations organized under the laws of this state and which have failed to pay the license tax and penalty prescribed by section 4 of this Act shall be forfeited to the State of California " (section 7) ; that it is unlawful for any corporation to do business after forfeiture (section 12) ; that in case of forfeiture the directors "are deemed to be trustees of the corporation and stockholders or members of the corporation whose power or right to do business is forfeited and have full power to settle the affairs of the corporation " (section 13).

When a corporation has failed to pay its license tax, and a forfeiture of its charter has been declared, it ceases to be a corporation. *Newhall* v. *Western Zinc Mining Co.*, 164 Cal. 380; 126 Pac. 1040.

The provision of the statute to the effect that the directors " are deemed to be trustees of the corporation and stockholders or members of the corporation whose power or right to do business is forfeited and have full power to settle the affairs of the corporation " was construed in the case of *Crystal Pier Co.* v. *Schneider*, 40 Cal. App. 379; 180 Pac. 948. In that case, the court said:

After forfeiture of the charter the situation, then, is this: The title to all property that formerly belonged to the dead corporation is vested in those who were its stockholders at the time of its demise ; the trustees to settle the affairs of the corporation have in their possession property belonging to those who were

stockholders at the date of the dissolution; they are bound to settle the affairs of the former owner, the defunct corporation; they have all the power to deal with and dispose of the property that is necessary to accomplish that object.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

As the court said in *Rossi* v. *Caire, supra* [174 Cal. 74; 161 Pac. 1161], speaking of the act that makes the directors in office trustees to settle the affairs of the dead corporation: "The obvious purpose of this statute \* \* \* is, as was said in the Havemeyer Case [84 Cal. 362, 24 Pac. 121], above cited, 'to leave the whole matter of liquidation and distribution to the exclusive control of the directors of the corporation in office at the time of dissolution.'"

Since the whole matter of the liquidation and distribution of the assets was left to the exclusive control of the directors of the corporation, the stockholders did not become entitled to possession, use and control of their pro rata share of the assets of the corporation until the directors acting in their capacity as trustees distributed such assets to them. The directors had the right to sell the assets or to distribute them. As the court in the above cited case said:

\* \* \* As donees of such power, the persons referred to by the statute as "trustees" are vested with latitudinous discretion in determining whether a sale or other disposition of the corporate assets should be made—a discretion with which, in the absence of fraud or collusion, the courts will not interfere.

In view of the power, control and discretion as to the manner of the exercise thereof vested in the directors of the corporation over the assets, it is our opinion that the stockholders did not receive any gain or loss with respect to the assets until they were distributed by the directors in liquidation. This being true, the petitioner sustained a loss in 1919 when the assets of the corporation were distributed. The loss is the difference between the cost of the stock, that is, $9,810, and the value of the assets received, that is, $1,833.33.

The second assignment of error was the refusal of the Commissioner to recognize and follow the laws of California with respect to community property and income and in treating the entire community income as the income of the taxpayer for each of the years 1919 and 1920. This issue was apparently abandoned as no evidence with respect thereto was introduced and no contention was made at the hearing or in brief. There is no evidence that the petitioner was a married man.

The action of the respondent, therefore, in treating the entire income of the petitioner for 1919 and 1920 as subject to the tax as his income and not permitting a portion thereof to be included in a separate return of his wife is approved. See *United States* v. *Robbins,* 269 U. S. 315; 46 S. Ct. 148, and *Appeal of D. Cerruti, et al.,* 4 B. T. A. 682.

> *Judgment will be entered on 10 days' notice, under Rule 50.*

Considered by Morris, Murdock, and Siefkin.