[Civ. No. 5815.    Third Appellate District.--November 17, 1937.]

HIBERNIA SECURITIES COMPANY, Appellant, v. M. H. MOREY, Respondent.

Erwin P. Werner, Thomas Maul, Newlin & Ashburn, George W. Tackabury, Werner & Linder, C. Hudson B. Cox and Edward Linder for Appellant.

James Cole, Henry S. Lyon and Robert E. Roberts for Respondent.

PULLEN, P. J.—The Hibernia Securities Company prosecuted this action against respondent M. H. Morey to quiet title to certain mining and mineral rights in lands situated in the county of El Dorado. The answer of defendant Morey, in addition to denying any title in plaintiff, averred title in herself to an undivided two-thirds interest in the property by virtue of a certain deed executed by Andrew C. Smith and his wife to defendant in 1932, and further alleged that in 1914 at the time of the dissolution of the Monarch Consolidated Gold Mining Company, an Oregon corporation, it was then the owner in fee of the lands in question and that Smith was, on that date, the owner of approximately two-thirds of the capital stock of said corporation.

Defendant claims to defend this action in her own behalf and as representative for others who she claims were stockholders of the Monarch Company at the time of its dissolution in 1914.

The facts involved in this case are largely covered by a stipulation from which it appears that prior to January 5, 1914, the fee in the mineral lands herein mentioned was owned by the Monarch Consolidated Gold Mining Company. Thereafter and on May 2, 1918, an action was commenced by one Burg against the Monarch Company, which action was based on a promissory note executed by Monarch Company in favor of Hibernia Savings Bank of Portland, Oregon, which note had been assigned by the bank to Burg. The summons and complaint were served on the Monarch Company on the day the action was filed, and on May 29, 1918, judgment was entered in favor of Burg and against the Monarch Company. Thereafter on June 18, 1918, an action was commenced in the

Superior Court of the State of California in the County of El Dorado by Burg against the Monarch Company predicated upon the judgment of the Oregon court. Thereafter judgment was rendered in this, the El Dorado County action, against defendant Monarch Company, and execution issued to enforce said judgment. The sheriff levied upon and thereafter sold at execution sale the mining property herein referred to, and a certificate of sale was issued by the sheriff to Burg, the purchaser at said sale. Thereafter by mesne conveyances the mineral rights were acquired by Hibernia Securities Company, plaintiff herein.

Sometime prior to these conveyances and on January 5, 1914, while the Monarch Consolidated Gold Mining Company was the owner of the mining property in question the corporation was proclaimed dissolved and its articles of incorporation revoked and repealed by proclamation of the governor of the state of Oregon, pursuant to an act of that state (Laws 1905, chap. 172, p. 299), as amended by Laws 1909, page 89, which act was subsequently incorporated in Lord's Oregon Laws as sections 6716–6725 thereof. Briefly section 6717 provided, among other things, that for failure to file certain annual reports and to pay its license fees for two consecutive years a defaulting corporation should be proclaimed dissolved by the governor, and any person thereafter exercising any of the corporate powers was guilty of a misdemeanor (L. O. L., sec. 6719); but as set forth in Lord's Oregon Laws, section 6721, such corporation might be reinstated by the governor at any time as to its corporate franchise upon its paying to the state treasurer the delinquent assessments.

It is the contention of the defendant that the proclamation of dissolution of the Monarch Company in 1914 without any subsequent reinstatement, rendered nugatory the Oregon judgment against said company in 1918, and that proceedings in California based upon this Oregon judgment were void, and title to the property in question vested in the stockholders of the Monarch Company upon issuance of the governor's proclamation.

Plaintiff maintains that the Monarch Company was amenable to the service of the process upon it in the suit of the creditor subsequent to the forfeiture of its franchise and that the Oregon court had jurisdiction to render a valid judg-

ment against the delinquent corporation and subsequent proceedings on that judgment in California were both regular and valid.

The trial court upheld the defendant's contention and found that defendant and all stockholders in the Monarch Company now owned and held the fee simple title in the property involved, and that plaintiff, claiming under the sheriff's deed from the sheriff of El Dorado County, acquired no rights in the mining property.

It is now the duty of this court to determine the effect to be given to the Oregon statute of 1905 as amended, and in particular whether the forfeiture of the corporate franchise of the Monarch Company by proclamation of the governor for nonpayment of its license taxes rendered it immune to the action of its creditors whose claims were still enforceable and before being barred by any statute of limitations.

Among other things, section 6617 of Lord's Oregon Laws provides that the Secretary of State shall present to the governor a list of all corporations which for two years or more next preceding such report, have failed to furnish any statement or to pay any license fee required by the laws of the state of Oregon, and that the governor shall forthwith issue his proclamation declaring such corporations dissolved and their articles of incorporation revoked and repealed, and the Secretary of State shall endorse on the articles of incorporation that such corporation has been dissolved and its articles revoked and repealed. Section 4 thereof also provides that any person who shall exercise or attempt to exercise any power under the articles of incorporation of any such corporation after the issuance of such proclamation shall be guilty of a misdemeanor. It is also provided in the same act that if any corporation shall be dissolved in the manner provided, the governor, by and under the advice of the attorney-general, may at any time upon payment by said corporation to the state treasurer of certain specified sums be reinstated and restored to all its franchises and privileges, and upon such payment the secretary of state shall issue his certificate entitling said corporation to resume its business and its franchise. It is upon this reinstatement clause that appellants rely for a reversal, contending that the effect of such proclamation was to suspend activity only of the corporation during the period of its delinquency.

To determine the effect of this statute it is necessary to examine first the interpretation of the Oregon courts of these provisions:

In *Deschutes Co.* v. *Lara,* 127 Or. 57 [270 Pac. 913], a corporation had been dissolved for failure to pay its taxes. " . . . The defendant there argued that the necessary consequence of the Governor's proclamation was to take title out of the corporation and vest it in . . . the owner of all the corporation's capital stock. . . . The court limited its inquiry as to whether a corporation during the period of revocation possessed capacity to serve as a repository of title and as obligor of a debt. The court then proceeded to hold that such dissolution by proclamation did no more than forfeit its right to do business, and it did not distinguish it as a legal entity, saying: We conclude that, while it was powerless to transact any new business, it possessed capacity to serve as a repository of title and as obligor of the debt, and that, when its corporate functions were revived October 17, 1927, this piece of property remained as one of its assets.''

In *Smyth* v. *Kenwood Land Co.,* 97 Or. 19 [190 Pac. 962], a stockholder, after dissolution, brought an action for damages to personal property belonging to the corporation because of its removal and sale by defendant after an alleged default in the sales contract. While the court there does not pass upon the question here before us, by inference it seems to be authority for the contention of appellants herein that the rights of creditors are still enforceable against a corporation whose charter has been revoked.

" . . . Regardless of whatever the rule may have formerly been, it is now a well-established doctrine that the property of a corporation, including rights of contract and choses in action, upon dissolution of the corporation, become vested in the stockholders, subject to the rights of creditors; and ordinarily, and in the absence of debts, the stockholders, upon dissolution of the corporation, become the owners of its assets. (Citing 5 Thompson on Corporations and various cases) . . .

''For the purpose of the instant case we shall assume, without deciding, that in no event can stockholders of a dissolved corporation prosecute an action like this one, unless at the time the action is brought all the corporate debts have first been paid. . . .

"The uncontradicted testimony is that all the debts of the Westrumite Company have been paid, except the debt, if there is a debt, created by the land sale contract. If the writings concerning the land have not already created a debt, and if on account of what has occurred they cannot in the future create a debt, then it is accurate to say that there are no corporate debts, and that therefore the legal title to the corporate assets passes to the stockholders upon the dissolution of the corporation."

To the same effect is the case of *Service Lbr. Co.* v. *Sumpter etc. Ry. Co.*, 81 Or. 32 [149 Pac. 531, 152 Pac. 262, 158 Pac. 175], holding that upon dissolution by proclamation the property and rights of action of the corporation do not pass to the stockholders until the debts of the corporation have been paid.

Turning to the law of New Jersey, an examination of the cases set forth in the reports of that state shows it is similar in its essentials with the Oregon act here under consideration. The New Jersey act (Act 1905 [P. L., p. 508], as amended March 11, 1914 [P. L., p. 27]), provides that the "Governor shall forthwith issue his proclamation, declaring . . . the charters of these corporations are repealed, and all powers conferred by law upon such corporations shall thereafter be deemed inoperative and void."

Section 7 of the New Jersey act also makes provision for reinstatement and in language identical with provision 6721, Lord's Oregon Laws.

*Held* v. *Crosthwaite,* 260 Fed. 613, a New Jersey case, emphasizes that the presence of a corporate reinstatement clause similar to the one here involved, dispels the notion that forfeiture by proclamation of the governor results in the absolute death of the corporation, since reinstatement would in such event amount to an attempt to create a new corporation at the behest of the governor and would constitute an unlawful usurpation of power vested solely in the legislature.

The Circuit Court of Appeals in holding that plaintiff's remedy was against the corporation only, said:

"There is difficulty in reconciling the language of sections 1 and 2 of the act of June 3, 1905, providing for the Governor's proclamation declaring the repeal of charters for nonpayment of taxes for two years, with the language of

section 7, providing for a subsequent proclamation reinstating the charter. The question has not been passed upon by the courts of New Jersey.

"We think it clear that the charter may be and by the statute is repealed by the Governor's proclamation without the necessity of any application to the courts. It seems to us equally clear that the legislature cannot have intended by section 7 that upon payment of taxes by the corporation the Governor should create a new corporation. The legislature alone can grant corporate franchises, and no intention should be imputed to it to delegate the power to the Governor. Indeed, such a delegation would be invalid. *'Delegatus non potest delegare'.* Therefore the second proclamation of reinstatement must be held to relate to the first proclamation of repeal, and the corporation must be regarded as having continuously existed so far as the state is concerned. This is in accordance with the certificate which the secretary of state is required to issue, entitling the corporation 'to continue its said business and its said franchises'. . . .

"The plain object of the act was the collection of revenue for the state. . . .

"It must be confessed that the language used as to the repealing proclamation is very strong, but unless the provision for the reinstating proclamation is a nullity it must be held to relate to the repealing proclamation and completely validate the corporation and the acts of persons dealing as its directors and agents from that date. . . .

"It seems to us that the statutes construed as above and applied to the facts in this case leave the plaintiff with a remedy against the corporation only, and that this is a just and fair result."

A like conclusion is found in *Reade* v. *Broadway Theater Corp.,* 99 N. J. Eq. 282 [132 Atl. 477].

Turning to the law of California, we find that the California act of 1905 (Stats. 1905, p. 493) provided for the complete extinction of a corporation as a penalty for its failure to pay the franchise taxes, which is somewhat analogous to the construction here contended for by defendant.

In *Rossi* v. *Caire,* 174 Cal. 74 [161 Pac. 1161] (1916), our court said:

"The corporation having ceased to exist, it is no longer capable of holding the title or the possession; the property

belongs to the persons who were its stockholders at the time it ceased to be a corporation. (*Havemeyer* v. *Superior Court,* 84 Cal. 327, 362 [24 Pac. 121, 18 Am. St. Rep. 192, 10 L. R. A. 627].)''

In the later case of *Rossi* v. *Caire,* 186 Cal. 544 [199 Pac. 1042] (1921), and after the California law had been amended, our court said:

''The original License Tax Act (Stats. 1905, p. 493) contained no provision for a revivor of the corporation whose charter was forfeited for failure to pay the tax, . . .

''The status of a corporation whose charter is forfeited under the license tax act referred to is well settled by decisions of this court. The penalty imposed by the act for nonpayment of the license tax prescribed was exceedingly severe and the consequence doubtless often disastrous. . . . It was not a case simply of suspended animation, as under the present license tax law, but one of absolute death, and, as was held in *Rossi* v. *Caire,* 174 Cal. 74, 81 [161 Pac. 1161], previous action involving questions arising out of this very forfeiture, the corporation having ceased to exist, it was no longer capable of holding the title to the property ·formerly belonging to it, or the possession thereof.

''We would have an entirely different case had there been a statute authorizing remission of forfeiture and rehabilitation of the corporation at the time of the forfeiture of its charter.''

Our present license tax law referred to in the case just cited makes general provisions for rehabilitation of forfeited corporate franchises for delinquent corporations upon their payment of back taxes and penalties, after which amendment the California license tax law was rendered similar in effect to the Oregon law here in question.

In *Finch* v. *Finch,* 68 Cal. App. 72 [228 Pac. 553], it was held that during the forfeiture or the time that the corporation is denied the right to exercise corporate functions its existence is merely in a state of suspension, and with the compliance of the requirements of the statute it fully regains its original corporate status with the same powers which it possessed prior to the temporary loss of its corporate franchise, and that upon restoration to corporate existence, the officers who were in office and the respective stockholders who

owned the stock prior to the forfeiture resume each his original status.

Likewise in *Talcott Land Co.* v. *Hershiser,* 184 Cal. 748 [195 Pac. 653], the court held that the revival of the corporation after dissolution for nonpayment of its license tax, reinstates the corporation as well as powers, duties, rights and obligations.

The statutes of Washington, section 3842, Remington's Compiled Statutes (Laws 1907, p. 271) provide that it shall be the duty of the Secretary of State to strike from the records of his office the name of any corporation which shall have neglected for a period of two years to pay its annual license fee, and permits any corporation thereafter organized to use the name stricken.

Section 3843 of Remington's Compiled Statutes provides that any corporation whose name has been stricken is authorized to apply to the Secretary of State for reinstatement at any time thereafter.

In *Globe Construction Co.* v. *Yost,* 173 Wash. 522 [23 Pac. (2d) 892], suit was brought to remove a cloud on the title occasioned by a former mortgage foreclosure. Among other objections plaintiff contended that at the time it was served in the mortgage foreclosure action it had been stricken from the records of the Secretary of State. In considering that contention the court there said: " . . . So long as a corporation may reinstate itself it is not dead, and is, therefore, subject to process and suit," and cited in support of this contention *State* v. *Superior Court,* 135 Wash. 315 [237 Pac. 722], and *Haynes* v. *Central Business Property Co.,* 140 Wash. 596, 598 [249 Pac. 1057].

In *State* v. *Superior Court, supra,* the court said:

"Under the present statute, there is no such thing as a dissolution of the corporation by the secretary of state. While the name of the relator has been stricken, it still has the right to be reinstated. Unquestionably, under section 3842, Rem. Comp. Stat. the relator would not be permitted to maintain an action, but there is no reason why it may not be sued and defend. So long as it may reinstate itself, it is not dead, but its powers are merely circumscribed."

In Colorado it is provided in section 2317 of Compiled Laws that upon nonpayment of license taxes for five years the Secretary of State shall publish a list of such delinquent

corporations and they shall thereupon be deemed "defunct and inoperative and no longer competent to transact business", and further provided for reinstatement upon payment of all delinquent taxes.

Considering the language in this section, the courts of Colorado in *Bokel* v. *Zitnik,* 93 Colo. 565 [27 Pac. (2d) 753], said:

"It seems to us, and we hold, that section 2317, *supra,* was intended, not to effect a dissolution of a corporation coming within its terms, so as to vest in the directors title to its property under section 2295, *supra,* but merely to suspend its operation while it is in default. (*Smith* v. *Highland Mary Mining M. & P. Co.,* 82 Colo. 288 [259 Pac. 1025] ; *Ruth* v̇. *Devany,* 84 Colo. 476 [271 Pac. 623] ; *Federal Crude Oil Co.* v. *Yount-Lee Oil Co.,* [Tex. Com. App.] 35 S. W. (2d) 111.) "

In *Hazard* v. *Park,* 294 Fed. 40 (Colo.), plaintiffs sought to restrain defendants from obtaining a sheriff's deed under a judgment obtained against the corporation upon the ground that prior to the filing of the foreclosure suit the company had been declared defunct and inoperative on account of failure to file annual reports. Said the court:

"This action of declaring the corporation defunct and inoperative was taken by the secretary of state in 1913. . . . Was the action of the secretary of state under the statute, in declaring the corporation defunct, equivalent to a dissolution in the sense that no suit could be instituted against the corporation? This question must be answered in the negative. The evident intent of the Colorado statute is to penalize a corporation for failure to file its reports by prohibiting it from doing business in the state during the period of such failure, for the reason that the statute likewise provides that such suspension may at any time be lifted by filing such reports. . . . Certainly, if a corporation had been dissolved, it could not be resurrected and reinstated as an entity, in such a free and easy manner."

In the *Matter of Double Star Brick Co.,* 210 Fed. 980 (Cal.), a California corporation had forfeited its franchise for nonpayment of license tax under the California act of 1905. In considering that situation it is there said:

"Very clearly the primary, if not the only, purpose of the statute was to take away from defaulting corporations the

power to act as such corporations; their privilege to do business is withdrawn as a penalty for their failure to pay the license fee or tax. It certainly was not the intention of the legislature to impose any penalty upon, or to destroy, the rights of creditors. Were it not for these expressions of the Supreme Court of the state, I should not hesitate to hold that the statute operates simply to render corporations incompetent to transact business.'' This last sentence is explained by noting that the forfeiture arose under the California act of 1905 which, as pointed out in the two cases of *Rossi* v. *Caire, supra,* contained no provision for reinstatement, and so had the effect of completely extinguishing the corporation. In subsequent license tax acts such provisions were a part of the statute. It will be recalled that such a provision is also found in the Oregon statutes under consideration.

The statutes of Ohio, section 5510 of the Ohio Gen. Code imposed a fine upon ''any person or persons who shall exercise . . . any powers . . . under the articles of incorporation . . . after the same are cancelled''.

In *Eversman* v. *Ray Shipman Co.,* 115 Ohio St. 269 [152 N. E. 643], the court, considering the various forfeiture statutes, proceeded to hold that construed together the various sections revealed a legislative intention that all power and authority of a corporation was not terminated by a dissolution for nonpayment of taxes. The court in that connection there said:

''Section 5510 clearly contemplates that the officers of such corporation may continue to exercise the forbidden powers, privileges, and franchises, and provides a penalty for such exercise. It may, therefore, be inferred that the legislature recognized a measure of vitality in the corporation, and that it intended to penalize the continued exercise of powers which would be valid, though interfering with the primary purpose which the legislature had in mind.''

It is true, as pointed out by respondent, that the language used as to the repealing proclamation is very strong, ''Dissolved, and the articles of incorporation revoked and repealed''. Nevertheless we must keep in mind that the statute is a revenue act, the principal purpose being to collect corporate taxes and assessments, and that the same act also contains a right of reinstatement upon the payment of the delinquent tax. We must also keep in mind that we are dealing with

rights of creditors, who have no interest in the corporation other than to obtain repayment of their claims, and the legislature certainly did not intend to penalize the creditors or destroy any of their rights.

It would therefore seem that not only good conscience but the statute itself compels the holding that the dissolution of the Monarch Company by the governor's proclamation had the effect only of forfeiting its right to carry on business, but did not deprive its creditors of their right of action.

Other points are advanced by appellant, but what we have said is sufficient to require a reversal, and no advantage would be gained by a further discussion of the issues.

The judgment must be reversed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 17, 1937, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 14, 1938.